**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 134, et al. v. WESTERN UNION TELEGRAPH CO.**

(Circuit Court of Appeals, Seventh Circuit. June 1, 1925.)

No. 3483.

Constitutional law ⊜➩83(2) — Preliminary injunction, restraining employees from compelling their employers to violate their contract with telegraph company, held not imposition of involuntary servitude.

Preliminary injunction restraining trade union and employees from doing acts to compel employers to injure and annoy, and violate contracts with, telegraph company for installation of call boxes in employers' buildings solely because such company employed nonunion men, *held* not to impose on defendants involuntary servitude, within Const. Amend. 13.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; James H. Wilkerson, Judge.

Suit by the Western Union Telegraph Company against the International Brotherhood of Electrical Workers, Local Union No. 134, and others. From a decree of the District Court (2 F.[2d] 993), defendant appeals. Affirmed.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

Hope Thompson, of Chicago, Ill., for appellants.

Francis R. Stark, of New York City, and West & Eckhart, of Chicago, Ill. (Wm. L. Bourland and William Rothmann, both of Chicago, Ill., of counsel), for appellee.

PAGE, Circuit Judge. This appeal is from an order granting a preliminary injunction at the suit of the Western Union Telegraph Company, a New York corporation, appellee, against appellants, labor unions, their officers, agents, and members, in Chicago.

Appellee is a public utility, doing a general telegraph business throughout the country, and operates an "open shop." As a part of its service equipment, it places its cables, wires, and other appliances upon and in many properties and buildings in the city of Chicago, Ill., and elsewhere in many states. Appliances, named "call boxes," are installed for customers in many buildings, and by their use the customers may signal appellee's offices and call to their aid a boy to carry telegraph messages to, and to be transmitted by, appellee. It being more economical to make installations while buildings are in course of construction, appellee's workmen and the workmen of one or more of the defendant organizations were often upon the same premises at the same time, but frequently not in contact at all, and sometimes far removed from each other.

The charges in the bill are that, within the year prior to the filing of the bill, upon some 25 or 30 premises named, there were many activities on behalf of appellants, or some of them, against appellee, that took the form of injuries to cables and other property, strikes or threats to strike, and other acts that induced the owners of the premises, where appellee was doing its work or desired to do it, to prevent appellee from proceeding with its work. The District Court found that the allegations of the bill were sustained, and that appellee had a right to equitable relief, not only because there was shown an intent to restrain interstate commerce, but also because there was shown diverse citizenship and an unlawful boycott.

There is not much controversy about the facts. The contention on behalf of appellants is that the injunction imposes upon appellants "involuntary servitude," in violation of the Thirteenth Amendment to the Constitution of the United States, by compelling them, as union men, against their wishes and interests, to work with nonunion men in the same trade. No appellant was, had been, or prospectively was to be, an employee of appellee. The things that were done were not done because of any violation by the employer of any term of the contract of employment. They were not done to induce the payment of higher wages, better working conditions, or for any other lawful purpose. But they were done to compel their own perfectly satisfactory employers, or the owners of the premises where appellee was doing or desired to do its installation work, to injure and annoy appellee, and to cause such employers to violate contracts with appellee,

for the sole reason that appellee employed nonunion men. What the Supreme Court said in American Foundries v. Tri-City Council, 257 U. S. 184, 212, 42 S. Ct. 72, 79 (66 L. Ed. 189, 27 A. L. R. 360), concerning the Duplex Case, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, is applicable and controlling here:

"Duplex Printing Press Co. v. Deering, 254 U. S. 443 [41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196], also cited, can have no bearing here. In that case the International Association of Machinists, an unincorporated association, having a membership of more than 60,000, united in a combination to compel the complainant to unionize its factory, enforce the closed shop, the eight-hour day, and the union scale of wages by boycotting the interstate trade of that company. They conducted in the city of New York a campaign of threatening the customers of the printing press company, the trucking companies that carried its presses, and those who were engaged in the work of setting up such presses, with injury to them in their business, if they continued to deal with the Duplex Company or its presses. It was a palpable effort on the part of the International Association of Machinists to institute a secondary boycott; that is, by coercion, to use the right of trade of persons having nothing to do with the controversy between the Duplex Company and the Machinist's Union, and having no interest in it, to injure the Duplex Company in its interstate trade."

Speaking of the wrongful exercise of a right, the Supreme Court said in Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 439, 31 S. Ct. 492, 497 (55 L. Ed. 797, 34 L. R. A. [N. S.] 874):

"Society itself is an organization, and does not object to organizations for social, religious, business, and all legal purposes. The law, therefore, recognizes the right of workingmen to unite and to invite others to join their ranks, thereby making available the strength, influence, and power that come from such association. By virtue of this right, powerful labor unions have been organized. But the very fact that it is lawful to form these bodies, with multitudes of members, means that they have thereby acquired a vast power, in the presence of which the individual may be helpless. This power, when unlawfully used against one, cannot be met, except by his purchasing peace at the cost of submitting to terms which involve the sacrifice of rights protected by the Constitution, or by standing on such rights and

appealing to the preventive powers of a court of equity. When such appeal is made, it is the duty of government to protect the one against the many as well as the many against the one."

The decree is affirmed.