(No. 25381.—

MEYDEL ELLINGSEN *et al.* Appellees, *vs.* THE MILK WAGON DRIVERS' UNION OF CHICAGO LOCAL 753 *et al.* Appellants.

*Opinion filed June 13, 1941.*

FARTHING, J., specially concurring.

DAVID A. RISKIND, and ABRAHAM W. BRUSSELL, for appellants.

EDGAR J. COOK, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

The superior court of Cook county, on the complaint of fifty-seven storeowners, enjoined the defendant Milk Wagon Drivers' Union and certain of its members, from picketing stores of the plaintiffs or engaging in conversation with the owners, customers, or deliverymen delivering goods to such stores, or displaying banners, or interfering or attempting to interfere with persons with whom the plaintiffs were doing business, or by persuading or attempting to persuade by misrepresentation, fraud or coercion, such persons or their agents to break their contracts with the plaintiffs.

The defendants, according to the charge in the complaint, were interfering with plaintiffs' places of business by picketing their stores, interfering with customers, making threats and doing unlawful acts in pursuance of an alleged conspiracy to injure the business of the plaintiffs. Plaintiffs aver that there is no labor dispute existing between the plaintiffs and defendants and that the provisions of the Anti-Injunction act of this State do not apply.

Defendants, in their answer, denied use of force or interference with customers or making threats, and denied

the existence of a conspiracy. They claim that this is a labor dispute within the provisions of the Anti-Injunction act in that drivers employed by the Farmers Co-operative Milk Company and the vendors handling the products of that company, who are not unionized, received less compensation and are under poorer working conditions and hours of employment than the union drivers, with the resulting detriment to the members of the defendants' union, because of unfair competition resulting from the ability of the Farmers Co-operative Milk Company, hereinafter referred to as the milk company, to sell milk for less, and that for these reasons their rights are infringed upon.

The record shows that defendant union unsuccessfully undertook to unionize the milk industry and to require those employing the system used by the milk company to pay their employees a fixed weekly salary and to adhere to other conditions of employment. They claim that in picketing the stores as they did, they were but exercising their constitutional right to freedom of speech. Plaintiffs reply that the drivers and vendors who purchase the products of the milk company are members of a labor union known as the Chicago Vendors, Drivers and Dairy Workers' Union, and are not employees of the stores that were being picketed, and that there is, therefore, no labor dispute involved.

The master heard the evidence and reported recommending the issuance of the injunction here complained of. The evidence in the case tends to show that the defendants posted certain members of their union in front of the stores of four out of the fifty-seven plaintiffs, and threatened to picket the rest of them. These union members patrolled in front of the stores carrying a placard bearing the legend, "This store is unfair to Milk Wagon Drivers' Union, Local 753 I.B.T. affiliated with the A. F. of L." It is not contended that there was violence in the sense of physical assault or destruction of property, but that, by statements

and actions of a threatening nature, the pickets sought to coerce deliverymen and others, to whom such pickets were talking, into staying out of the stores; that they blocked the entrance of one of the stores and caused drivers delivering merchandise purchased by the storekeepers whose places were picketed, to drive away without making delivery, and by threats and false statements attempted to keep customers from going into these stores and doing business with them, by which means plaintiffs say they wrongfully interfered with the right of the plaintiffs to do business and to have their contracts fulfilled.

The milk company distributes its products by its own drivers and by vendors, as they are called, who purchase the milk from the company and distribute it with their own trucks to customers. The products of the milk company are also distributed by the owners of independent stores. The Chicago Vendors, Drivers and Dairy Workers' Union, to which the employees and vendors handling the milk company products belong, is in no way affiliated with the defendant union. It is, therefore, charged by the plaintiffs that there is no labor dispute existing between the milk company and its employees, nor between these plaintiffs and defendants, and that the plaintiffs, storekeepers, have no employees who are eligible to membership in the defendant union.

Assignments of error present the questions whether the Anti-Injunction statute of this State applies, whether the picketing was peaceful, whether the injunction order deprived defendants of their constitutionally guaranteed right of free speech, and whether the decree is uncertain and indefinite.

The facts of this case and the questions involved are in many respects similar to those raised in *Meadowmoor Dairies Inc.* v. *Milk Wagon Drivers' Union,* 371 Ill. 377. This court in that case considered the applicability of the Anti-Injunction act of this State, the guaranties of free-

dom of speech in the operation of labor, the free and open use of property by its owner, freedom of contract and the right to do business without molestation. It was held that the Anti-Injunction act of this State was not broad enough to cover cases where there was no labor dispute between employers and employees. It was also held that where picketing is a part of violence and destruction of property, all picketing may be enjoined, though some features of it except for such violence, are not unlawful. It was there, under the facts of that case, held also that what took place amounted to a secondary boycott, which was contrary to the laws of this State and constituted an illegal activity on the part of the defendants.

In *Swing* v. *American Federation of Labor*, 372 Ill. 91, similar questions arose. In that case members of the Hair-dressers and Cosmetologists Union attempted to unionize the plaintiff's beauty parlor. Failing to do so, picketing followed, and Swing, the owner of the shop, and his employees sought an injunction. The complaint alleged that there was no dispute between them and defendants; that plaintiff, owner, was not objecting to membership of his employees in the union, and, therefore, there was no labor dispute between the parties to the suit, as contemplated by the Anti-Injunction statute. The complaint also charged that malicious and untrue statements were made; that in some cases the pickets forcibly interfered with the customers. This court held that a preliminary injunction was properly issued because no dispute existed between the employer and his employees; that there were acts of violence and that the placards used in picketing were libelous. The questions before this court arose over an order for a temporary injunction issued by the Appellate Court for the First District, which court had reversed the chancellor's decree dismissing the complaint on motion of the defendants. (298 Ill. App. 63.) This court affirmed the order of the Appellate Court on the ground that the Anti-Injunc-

tion act of this State did not apply and the complaint was sufficient—the facts alleged being admitted by the motion to dismiss—to warrant such preliminary restraint. Thereafter, the Appellate Court entered a permanent injunction enjoining acts of violence, threats and intimidation and enjoined peaceful picketing as well as acts of violence.

Both the *Meadowmoor case* and the *Swing case* were taken to the Supreme Court of the United States, a Federal constitutional question being involved. The former was taken by *certiorari* to this court and the latter by such writ to the Appellate Court. Since the submission of the case before us the United States Supreme Court has decided both those cases. In the *Meadowmoor case,* (312 U. S. 287, 85 L. ed. 497,) it was pointed out that the construction by this court of the Illinois Anti-Injunction act was beyond the jurisdiction of the United States Court to review, but rulings on questions of constitutional guaranties of freedom of speech lie within the jurisdiction of that court to review. It was there held that the injunction was justified by the violence shown in connection with the picketing, and that whether in an injunction case of this character the State court should enjoin non-tortious acts as well as acts of violence and intimidation where the peaceful acts of picketing are so enmeshed with violence that it can be justifiably concluded "that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful," was a matter of policy of the State which the Supreme Court of the United States did not have jurisdiction to review.

It is, of course, recognized that in all questions involving provisions of the Federal constitution, the Supreme Court of the United States is the final arbiter, and this court is bound by its holding on such questions. In the *Meadowmoor case* the Supreme Court of the United States held that, notwithstanding the lack of application of the Illinois Anti-Injunction act, the question of picketing as

an element of free speech involved the application of the Federal constitution. The scope of the injunction in the *Meadowmoor case* denying all picketing, was sustained on the ground that the power of the State so to do arose out of its power "to base its protection against future coercion on an inference of the continuing threat of past misconduct." It was there held, however, that the right to free speech in the future cannot be forfeited because of disassociated acts of past violence, citing *Near* v. *Minnesota*, 283 U. S. 697, 75 L. ed. 1357. The *Meadowmoor case* definitely holds that peaceful picketing is a right which the working-man has as a means of communication of his complaint, where the subject matter of the dispute contains elements of common interest, even though the relation of employer and employee does not exist.

In *American Federation of Labor* v. *Swing,* 312 U. S. 321, 85 L. ed. 513, it was held that to attempt to justify an injunction against peaceful picketing or persuasion in relation to any dispute between an employer and a trade union, unless the employer's own employees are involved with him, would, because of the interdependence of economic interest of all those engaged in the same industry, be to establish a ban on free communication inconsistent with the guaranties of free speech.

These cases present a new view of the constitutional right of free speech as applied to cases like the one before us. They are the law, binding on all State courts. It follows, therefore, that notwithstanding the inapplicability of the Illinois Anti-Injunction act, or the fact that there is not here an employer-employee labor dispute, defendants had a right to, in a peaceful manner, picket the stores of the plaintiffs. There remain, therefore, in the case before us, the questions whether the picketing was peaceful as that term is defined in the cases, and whether, in cases of violence or threats amounting to intimidation or coercion, this court is justified in sustaining a decree enjoining all

acts of picketing, including non-tortious acts as well as acts of violence and intimidation.

Cases have been cited by appellants, arising in States where the public policy, so far as it has been asserted by legislative action, places a closer limitation on the right of courts to enjoin picketing in labor disputes than has existed in this State. The question of the adjustment of constitutional rights is one which calls for most careful consideration, uninfluenced by economic or social bias on the part of the judge. The constitution does not recognize degrees of right. It gives to the employer the right to fulfill his contracts, to conduct his business and to protect his property. It gives to the workingman the right to present, through medium of speech or conveyance of information, whether oral or written, his part of a controversy pertaining to employment, in an effort to improve his condition, but neither may act illegally against the other in furthering his cause.

It is an old maxim of law and justice as well as a living principle of American free government, that one may not assume that his right is so absolute that it may be exercised under any circumstances and without any qualification. All rights that exist in civilized society must always be exercised with reasonable regard for the conflicting rights of others. This is the meaning of the legal maxim written by Broom in his Legal Maxims, (8th ed.) 289, and is a principle which meets the approval of all fair-minded persons.

This court has long recognized, as will appear from the specially concurring opinion in *Lyon & Healy* v. *Piano Workers' Union*, 289 Ill. 176, and cases of this court there cited, that these controversies cannot occur without causing some damage; that, in a strict sense, any action taken by striking workingmen or pickets, even that of staying away from their employment, is to some extent injury to the employer. Courts may not, by injunction or otherwise,

prevent all injuries to the parties to a controversy of this character. The claim of the workingmen is that failure of the employer, in a given business, to meet the conditions as to wages and employment fixed by the unions in such industry, thus enabling such employer to sell his products cheaper, creates an unfair competition in that industry, which results in loss to the workingmen of wages and employment, and that they have a right to present that side of the controversy in the only form of expression which they have. But as said by Mr. Justice Holmes, in *Aikens* v. *Wisconsin,* 195 U. S. 194, 49 L. ed. 154: "When the acts consist of making a combination calculated to cause temporal damage, the power to punish such acts, when done maliciously, cannot be denied because they are to be followed and worked out by conduct which might have been lawful if not preceded by the acts. No conduct has such an absolute privilege as to justify all possible schemes of which it may be a part. The most innocent and constitutionally protected of acts or omissions may be made a step in a criminal plot, and if it is a step in a plot, neither its innocence nor the constitution is sufficient to prevent the punishment of the plot by law."

In *Fenske Bros. Inc.* v. *Upholsterers Union,* 358 Ill. 239, this court held that the carrying of placards containing threats, malicious abuse or designedly false statements, is not peaceful persuasion, and that signs containing no such statements may be carried so offensively or with such annoyance as to amount to intimidation and thus become unlawful; but that, on the other hand, the carrying of signs merely announcing the strike and that the employer is not employing union labor, or is unfair to union labor, may be wholly peaceable persuasion, and that if not accompanied by acts of violence and intimidation it is not subject to being restrained. It is also there held the mere fact that acts of violence had previously occurred does not of itself afford a basis for enjoining legal acts of peaceful persuasion.

Courts may not, as pointed out in *Kemp* v. *Division No. 241, 255* Ill. 213, by writ of injunction, prevent employees from striking.

In the fourth volume of the Restatement of the Law of Torts, section 814, it is pointed out that in determining whether injunctive relief against concerted action of workers should be granted, courts should consider the interests of the workmen and likewise that of the plaintiff, and the damage that may result to either by the determination of the court, as well as the character of the conduct sought to be enjoined. The rule, as stated in this volume of the Restatement, section 816, is, in substance, that non-tortious conduct connected with the enjoined acts of violence and intimidation may be enjoined only if it is clear from the past behavior of the defendants that unless they are enjoined from engaging in the non-tortious conduct they will continue such acts of violence and intimidation.

This brings us to a consideration of the acts of violence and intimidation alleged to have been committed in connection with the picketing in this case. The master found that there was evidence of intimidation by threats; that some of the conversation of the pickets was such as to amount to an attempt to coerce the storekeeper to give up the sale of the milk of the milk company and to prevent the delivery of other merchandise by preventing drivers going to the store who had sold the merchandise to the storekeeper. An examination of the evidence shows that in some instances the pickets sought to interfere with customers, such as attempting to prevent the purchase of chocolate milk by children who had purchased and were drinking it, by telling them: "You will get sick drinking that stuff. Do you know how they get that chocolate milk? They go to the toilet and get it." In other instances drivers delivering other products were told they could not go in. In one instance the picket stood in front of the doorway and prevented a driver from delivering orange juice which he had

sold to the storekeeper, and by obstructing the doorway and gesturing prevented the deliveryman from entering. Other evidence is that delivery drivers were told "to get to hell out of here" when they stopped. Other instances were that the pickets declared that drivers would get into trouble if they went into the store. Another witness testified that a picket told him: "Don't enter there. Don't open the door or step into that store." That the witness replied: "Business is business," to which the picket added: "If you are smart about it, don't you know some day we will get even with you?" The master finds that the Union instructed the pickets not to engage in conversation with the storekeeper, or anyone else, but that they violated those instructions. The master also found that the evidence shows that one of the stores picketed was caused to lose at least one customer by statements of the pickets amounting to an attempt to coerce.

A threat or gesture of intimidation used in an attempt to coerce the one picketed, cannot be said to be in furtherance of the right of free speech. Threats and intimidation may, quite as definitely, arise from conduct and demeanor as from spoken threats, or violence. When one is warned of injury to himself if he does business with a store, such a threat or intimidation, whether in words or acts, does not partake of the elements of a fair presentation of the workingman's side of the controversy but partakes more of the elements of that power which is, with increasing frequency, found to be exercised by the gangster and racketeer by inducing fear of injury. Therefore, threats and attempts to coerce by intimidation are not peaceful picketing; nor do they reasonably present the workingman's side of the controversy. We are of the opinion that such threats amount to conduct which may be enjoined.

That the appellants herein had a right peacefully to picket these stores has been unequivocally settled by the United States Supreme Court in the *Meadowmoor* and *Swing cases,*

but no case with which we are familiar holds that these pickets had a right, by threats or intimidation, to attempt to coerce the appellees here into compliance with their demands. The record in this case does not, however, contain evidence tending to indicate that threats or statements such as were made, are apt to become an element of future picketing. The master found, and the officers of the defendant union testified without dispute, that the pickets were instructed they were not to talk to anyone while on picket duty, were not to obstruct the business of the stores and were to use no force or violence. This case is, under the above described record, to be distinguished from the *Meadowmoor case,* where the record justified the restraining of non-tortious acts of picketing as well as acts of violence and threats.

It follows from the views herein expressed, that the decree, in so far as it restrained such conversation or action as would amount to threats or attempts to intimidate, was properly issued, but the decree should be modified to exclude from its scope such peaceful picketing as the evidence and the finding of the master indicate the pickets were, in this case, by instruction of the appellant union, to carry on. Picketing of that sort was and is a lawful exercise of the right of free speech.

Appellants complain of the amount of master's fees assessed. So far as the abstract filed by them shows, there was a hearing on the master's certificate for fees and his claim was substantially reduced. We are, from this abstract, unable to say that no hearing was had on that claim. Defendants argue that it was error to allow to plaintiffs, as costs, the sum of $543.45, stenographer's fees for transcribing testimony taken before the master in chancery, because they say the stenographer in this case was employed by the plaintiffs and they were not entitled, under the Fees and Salaries statute, (Ill. Rev. Stat. 1939, chap. 53, par. 38,) to have such stenographer's fees taxed as costs.

That section provides that the master in chancery may be allowed certain enumerated fees for services, and further provides that the "court may also include as a part of such master's fees, a reasonable allowance not to exceed fifteen cents per one hundred words, for stenographer's services in cases where the master shall certify that a stenographer was necessarily employed, and shall attach to his report a certified copy of the testimony taken by such stenographer." The record in this case contains no certificate of the master that the services of a stenographer were necessary. The decree, however, found that a court reporter was necessarily employed, and that his fee of $543.45 is reasonable and should be taxed as part of plaintiffs' costs. The only authority for taxing, as costs, stenographic fees for taking and transcribing testimony before a master in chancery, is that given in section 20 (paragraph 38) of the Fees and Salaries act. There was no substantial compliance with the provision of that statute and the allowance of $543.45 to plaintiffs as a part of their costs was erroneous.

For reasons herein given, the decree of the superior court is reversed and the cause is remanded with directions to enter a decree in accordance with this opinion, costs of the case to be divided equally between the defendants, on the one hand, and the plaintiffs, on the other.

*Reversed and remanded, with directions.*

Mr. Justice Farthing specially concurring:

While I do not favor a different result, I cannot subscribe to the greater part of what is said in this opinion. For the reasons stated in the dissent in *Swing* v. *American Federation of Labor,* 372 Ill. 91, it is my belief that the Illinois Anti-Injunction act (Ill. Rev. Stat. 1939, chap. 48, par. 2a) is broad enough to cover, and that it was intended to include, labor disputes which arise between employers and labor unions as well as disputes between employers and their employees.

It is also my belief that the decision in *Meadowmoor Dairies, Inc.* v. *Milk Wagon Drivers' Union,* 371 Ill. 377, was erroneous. That case involved the question above mentioned and also the right of free speech. There was never any dispute in the *Meadowmoor case* as to the right to enjoin acts of violence. Neither was it disputed that the defendant's officers had forbidden those picketing to commit acts of violence or to make threats. That decision went far beyond the point at which it should have terminated and failed to protect the right of free speech. The views expressed by Mr. Justice Black in his dissent in the case when it reached the United States Supreme Court (85 L. ed. 497, 502) in my opinion, contained the sound principles applicable to that case.