(No. 26121.—

THE 2063 LAWRENCE AVENUE BUILDING CORPORATION, Appellee, *vs.* GUS VAN HECK *et al.* Appellants.

*Opinion filed June 17, 1941.*

FARTHING, J., specially concurring.

JOSEPH A. RICKER, for appellants.

ROBERT H. HOLMES, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants, a janitors' union in the city of Chicago, and a member thereof, bring this cause here to review a decree of the superior court of Cook county enjoining appellant union and its members from all manner of picketing the premises of appellee the 2063 Lawrence Avenue Building Corporation, hereinafter referred to as the owner, or publicizing in any manner that there was a labor dispute with the appellee, or doing any act to prevent delivery of service to the owners' building either by picketing, intimidation, persuasion or publication. Appellants contend that their constitutional rights have been infringed by this decree.

The appellee owner, in its complaint to enjoin picketing, charged acts of violence and intimidation on the part of appellants. A temporary injunction was entered in accordance with the prayer of the complaint. Appellants filed an answer admitting peaceful picketing in an attempt to unionize the building, denied all allegations of conspiracy, threat, coercion, intimidation or boycott, and moved to dissolve the temporary injunction. The cause was referred to a master in chancery who heard the evidence and recommended dissolution of the temporary restraining order. The chancellor, acting on this recommendation dissolved the temporary injunction and dismissed the complaint for want of equity. On appeal, the Appellate Court reversed the decree of the chancellor and remanded the cause, with directions to set aside the order dissolving the injunction and dismissing the bill of complaint and for such other and further proceedings as to law and justice shall appertain. Appellants filed here a petition for leave to appeal from this order of the Appellate Court and, as the order was entered on interlocutory appeal, the petition was dismissed. The superior court, on remandment of the cause, entered the injunction herein complained of. Appellants contend that the decree violates their constitutional right of free

speech; that it violates the Illinois Anti-Injunction act and that it is not supported by the evidence.

In many respects the issues of law here involved are the same as those in *Ellingsen* v. *Milk Wagon Drivers' Union of Chicago, post,* p. 76. In that case it is pointed out that by recent decisions of the Supreme Court of the United States, as the final arbiter on issues involving questions of the Federal constitution, an injunction of the nature issued here may involve infringement of freedom of speech guaranteed by the fourteenth amendment of the United States constitution, whether the injunction be authorized by statute, ordinance or by rule of court. (*Thornhill* v. *Alabama,* 310 U. S. 88, 84 L. ed. 1093; *Carlson* v. *California,* 310 id. 106, 84 L. ed. 1104; *Milk Wagon Drivers' Union* v. *Meadowmoor Dairies Inc.* 312 id. 287, 85 L. ed. 497; *American Federation of Labor* v. *Swing,* 312 id. 321, 85 L. ed. 513.) In the most recent of those cases, the *Meadowmoor* and *Swing cases,* it is held that peaceful picketing lies within the guaranty of free speech given by the Federal constitution, whether such picketing be within or without the provisions of the Illinois Anti-Injunction act, and this even though there is no labor dispute between the employer and the employees; that in cases of violence and unlawful conduct, however, State courts may enjoin contemporaneous peaceful picketing as well as the tortious acts.

In the *Thornhill* and *Carlson cases,* the former a case arising on a statute and the latter on an ordinance, the Supreme Court of the United States held that it was not within the power of the legislative department of a State or municipality to prevent peaceful picketing. From the cases just referred to it is definitely settled that to enjoin all picketing it must be found that violence has given the picketing a coercive effect whereby it would operate destructively as a force and intimidation, and it further appears to the court from the circumstances, that peaceful

picketing in the future would be enmeshed in violence, threats or coercion by intimidation.

Appellee says appellants were guilty of a secondary boycott as that term is understood. As we understand counsel, it is not contended that picketing in this case is subject to restraint because appellants engaged in a conspiracy or boycott as that term is defined and punished in the Criminal Code, (Ill. Rev. Stat. 1939, chap. 38, par. 139, p. 1134,) but it is contended that it is, in effect, a secondary boycott because of a conspiracy to injure the business of the complainant by seeking to have others break their contracts with it or withholding their patronage. A secondary boycott is sometimes called an indirect illegal boycott, and exists where evil motive is found accompanied by unlawful acts. Such a boycott is defined as a combination to exercise coercive pressure upon customers, actual or prospective, in order to cause them to withhold their patronage through fear of loss or damage to themselves. *Anderson & Lund Manf. Co.* v. *Carpenters' Council,* 308 Ill. 488; *Duplex Printing Press Co.* v. *Deering,* 254 U. S. 443, 65 L. ed. 349.

In the *Meadowmoor case* violence and threats were carried on to such an extent as to indicate a conspiracy to do injury to the one complained of by compelling the withdrawal of business from him and this court found that there was, in that case, a secondary boycott, notwithstanding protestations that the union itself did not sanction such conduct; and, in conformity with the almost universal rule in this country, upheld the power of courts of chancery to enjoin secondary boycotts. In the *Meadowmoor case,* in accordance with the weight of authority in this country, an injunction was sustained which restrained the execution of a conspiracy or the continuance of acts in furtherance of such conspiracy to injure the business of another by coercing, through injury or threats, customers or prospective customers to withhold patronage from it. Such is

in accord with the general rule. (*Purvis* v. *Local No. 500, U. B. of C.* 214 Pa. 348; *Fink* v. *Butchers' Union No. 422,* 84 N. J. Equity, 638; *Lohse Patent Door Co.* v. *Fuelle,* 215 Mo. 421, 114 S. W. 997; *Baldwin* v. *Escanaba Liquor Dealers Association,* 165 Mich. 98, 130 N. W. 214; *Harvey* v. *Chapman,* 226 Mass. 191, 115 N. E. 304; *Ellis* v. *Journeymen Barbers International Union of America,* 191 N. W. (Iowa) 111; *My Maryland Lodge No. 186* v. *Adt,* 100 Md. 238, 59 Atl. 721.) Such action is unlawful and may also afford basis for an action at law for damages. (*Doremus* v. *Hennessy,* 176 Ill. 608.) It will be seen from what we have said, that to give courts of equity jurisdiction to restrain a secondary boycott, it must contain the element of coercion, either by threats, intimidation or violence.

Turning then to a consideration of the evidence in this case, it appears that appellee owner at the time this difficulty arose, employed one William Vickery and Eleanor Vickery, his wife, the latter to do the janitor and maid work in the building and the former to do such odd jobs as he might do when not otherwise employed. Employment of the husband was not regular. Appellee's evidence is that the wife, Eleanor Vickery, was employed to do all the janitor work while the husband sought other work outside, though he did odd jobs around the building such as painting, repairing and cleaning. About June 17, 1937, one Robert McLeod, a business agent for appellant union, called at the premises involved in this case, and there talked with William Vickery and Eleanor Vickery. There is a dispute as to what was said but it is clear that his purpose was to endeavor to unionize the janitor service in that building. Eleanor Vickery testified that McLeod, when he appeared at the door of the Vickery apartment, was refused admittance and forced his way into the apartment by thrusting his foot in the open doorway. The Vickerys testified that his attitude was menacing and that at one

time during the conversation he said: "Do we have to bomb this place to let you people know we mean business?" All of this testimony is denied by McLeod who testified that the visit was entirely orderly and peaceable. The complaint does not charge language of the character testified to by the Vickerys but charges that McLeod had threatened that the place would be picketed if Vickery did not join the union.

A few days after this visit defendant Joseph Burns was placed on picket duty at this building. He wore or carried a banner stating: "This building is unfair to Chicago Flat Janitors Union Local No. 1." He continued to picket the premises for approximately five weeks when he was joined by another picket named Waters. The two picketed both front and rear of the building. The evidence is that the building covers the entire lot and that the only places in which pickets might carry on their work of picketing would be on the public street and alley, in front and rear of the building. The evidence is that the pickets informed drivers and service men bringing or taking away materials into and from the building, that the place was being picketed as unfair to organized labor, with the result that no union delivery or service men would call or deliver at the appellee's building. Appellee, on hearing before the master, attempted to show that such men refused to call because of threats or intimidation on the part of the pickets. An examination of the record, however, discloses that each deliveryman, save one, testified that when the pickets told him the place was being picketed he, the witness, thereafter refused to deliver because of the rules of his particular union, and not on account of any action or threats on the part of appellant or its pickets, and that there were no threats.

The one exception was a witness named Dahm, who testified that he was making delivery to the appellee's building but left when one of the pickets told him there was

a strike; that he returned later and seeing no picket around, made the delivery, and as he came out of the building a picket asked him if he knew there was a strike there, to which he replied that he did not see anybody; that the picket, on learning from Dahm that he was a union man, stated: "I am going to show you up with your union." On cross-examination, Dahm testified that he now has a business of his own and that he had no use for unions.

Appellee also introduced evidence tending to show that later, during the picketing, while two men were trying to deliver coal to this apartment, the two pickets then on duty were taken to jail by the police. It appears from the evidence that an officer, called to the scene, was on hand when the coal truck arrived. One Dorothy Holmes, the manager of the apartment, testified that the officer stopped the pickets from going near the coal wagon by pulling his gun. She heard heated conversation between the officer and the pickets and then a squad car came. She testified the officer told her to call the squad car. This is denied by the officer, who said that when she suggested calling a squad car he merely said: "All right." These pickets were taken to jail, questioned, released and returned to their picketing. The officer on duty at these premises did not testify that any violence or threats on the part of these pickets were indulged at the time of the delivery of this coal, and the master, after hearing all the evidence, found it insufficient to prove violence or threats or to support a finding that the picketing was anything other than peaceful picketing. It does not appear from the evidence concerning police intervention, that it arose out of unlawful acts of picketing so much as the fear on the part of the one calling the police that a disturbance might arise. The chancellor, in dissolving the temporary injunction, sustained the master's report. Neither the decree so doing, nor his final decree granting permanent injunction under the ruling of the Appellate Court on interlocutory appeal, made findings of fact.

44

We are of the opinion from the findings of the master and the evidence supporting it, that this is not a case which shows threats or violence, either to indicate a secondary boycott or to justify restraining peaceful picketing under the recent decisions of the Supreme Court of the United States hereinbefore referred to.

The decree of the superior court is reversed and the cause is remanded, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. Justice Farthing, specially concurring: I agree with the result reached in this opinion. I do not agree with the matters referred to as the holding in the *Meadowmoor Dairies, Inc. case* or with the holding itself in that case. I see no occasion to reiterate what was said in the *Meadowmoor Dairies, Inc. case* which was entirely too broad and was not based on the points actually at issue. Much that was said therein is not in harmony with the weight of authority and the modern decisions.