## WESTERN UNION TELEGRAPH CO. v. INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 134 et al.

### No. 8043.

Circuit Court of Appeals, Seventh Circuit.

March 3, 1943.

Percy B. Eckhart, Owen A. West, and John Neal Campbell, all of Chicago, Ill., and Francis R. Stark, of New York City (West & Eckhart, of Chicago, Ill., of counsel), for appellant.

Emory J. Smith, Smith, Marx & Smith, all of Chicago, Ill., for appellees.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

This appeal is from an order modifying an injunction issued July 19, 1924, enjoining appellees from interfering, through a secondary boycott, with appellant's business.

The complaint charged that the appellees had entered into a conspiracy to interfere with and restrain interstate commerce, and prayed for an injunction against the appellees, from calling a strike or threatening

to call a strike against employers other than the appellant by whom the unions were not employed; from interfering with or obstructing the interstate business of the appellant; from injuring or destroying its property; from compelling or inducing or attempting to compel or induce by threats, intimidation, persuasion, force or violence, any of the appellant's employees, to refuse or fail to perform their duties pertaining to interstate commerce; or from compelling or inducing any customers by threats, intimidation, force or violence, to break their contracts with appellant; or from preventing any person from entering the service of the appellant and doing the work thereof in interstate commerce. The District Court found that the allegations of the complaint were sustained and that the appellant had a right to equitable relief, not only because there was shown an intent to restrain interstate commerce, but also because there was shown diverse citizenship and an unlawful boycott. 2 F.2d 993; 7 Cir., 6 F.2d 444, 46 A.L.R. 1538. There were no findings of violence, and this court, in affirming the decree of July 19, 1924, stated it ignored the evidence of violence, 46 F.2d 736, 737.

It is clear that when the case was tried and reviewed by this court, it was believed that concerted action by a labor union to compel an employer to yield to its demands, under threat to obstruct his interstate commerce through a secondary boycott, was prohibited by the Sherman Act. 15 U.S.C.A. §§ 1–7, 15 note. But since the decree, it has been held that such activities are not in restraint of interstate commerce or violative of the Sherman Act, Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788, and the law has been so changed as to make the injunction a violation of the constitutional right of free speech, American Federation of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Ellingsen v. Milk Wagon Drivers' Union, 377 Ill. 76, 35 N.E.2d 349.

On April 28, 1941, the appellees filed their petition for modification of the injunction, alleging that the injunction in its present form is a violation of the appellees' constitutional rights in that it abridges their right to freedom of speech, freedom of assemblage, and the peaceful right to picket and bargain collectively, and that by the passage of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and a series of decisions of the Supreme Court construing the Act, the decree of July 19, 1924, was nullified. To the petition the appellant filed a motion to strike, because it failed to state any grounds upon which relief could be granted. The District Court, being of the opinion that the Norris-LaGuardia Act had legalized many of the acts prohibited under the decree, dismissed the motion to strike the petition and entered an order modifying the decree to conform with the Act, but continued to enjoin all acts of violence, threats, and intimidation, thus preserving to appellant all rights under existing laws.

Before determining the effect and the scope of the Norris-LaGuardia Act, it is well that we consider appellant's principal contention that the court lacked jurisdiction to modify the decree. The argument is that the injunction was permanent and the decree final.

■ An injunction protects civil rights from irreparable injury, either by commanding acts to be done, or preventing their commission, and the decree in such an action is an adjudication of the facts and the law applicable thereto. The decree, however, is executory and continuing as to the purpose or object to be attained, and operates until vacated, modified, or dissolved, Ladner v. Siegel, 298 Pa. 487, 148 A. 699, 68 A.L.R. 1172; it is permanent in the sense that it enjoins a party from doing that which he has no legal or equitable right to do. When, however, its continuance is no longer warranted, equity procedure assures opportunity for modifying and adjusting it to a particular situation in accord with the settled practice of equity, Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 298, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200, and though a decree may be final as it relates to an appeal and all matters included or embodied in such a step, yet, where the proceedings are of a continuing nature, it is not final, Ladner v. Siegel, supra, and the injunction will be vacated or modified where the law has been changed making acts enjoined legal, Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. 421, 18 How. 421, 15 L.Ed. 435.

■ The appellant makes the point that the decree did not provide that jurisdiction of the cause was retained for the purpose of modifying the decree. Even so,

"power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need," United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999. The injunction issued under the decree of 1924 was executory and continuing as to the object to be attained, and the court had the power to modify it.

■■ Since the passage of the Norris-LaGuardia Act, the federal courts have no jurisdiction to grant injunctions in labor dispute cases, except to restrain fraud and violence, and then only within the limitations of § 6 of the Act; and it is urged by the appellees, in support of the order, that the federal courts have no jurisdiction on the ground of violation of the Sherman Act or secondary boycott. On the other hand, the appellant contends that the Norris-LaGuardia Act is not retroactive. The argument on behalf of the appellant is in effect that to now apply the Act would annul the decree already rendered. A somewhat similar contention was made in Pennsylvania v. Wheeling, etc., 59 U.S. 421, 18 How. 421, 15 L.Ed. 435. In disposing of the contention, the court said (59 U.S. at page 431, 18 How. at page 431, 15 L.Ed. 435):

"This, as a general proposition, is certainly not to be denied, especially as it respects adjudication upon the private rights of parties. When they have passed into judgment the right becomes absolute, and it is the duty of the court to enforce it.

"The case before us, however, is distinguishable from this class of cases, so far as it respects that portion of the decree directing the abatement of the bridge. * * * But that part of the decree, directing the abatement of the obstruction, is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance. * * * If, in the mean time, * * * this right has been modified by the competent authority, so that the bridge is no longer an unlawful obstruction, it is quite plain the decree of the court cannot be enforced."

We think what was said in that case is applicable here, and we are impelled to the conclusion, under the circumstances here appearing, that the appellant cannot invoke the Sherman Act as a basis for in-junctive relief, Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; Milk Wagon Drivers Union, etc., v. Lake Valley, etc., 311 U.S. 91, 61 S.Ct. 122, 85 L.Ed. 63; United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788; International, etc., v. Pauly Jail Bldg. Co., 8 Cir., 118 F.2d 615; International, etc., v. Donnelly Garment Co., 8 Cir., 119 F.2d 892, and that the court could not enforce the decree so far as it enjoined the appellees from the exercise of free speech, since the right to free speech in the future cannot be forfeited because of dissociated acts of past violence, Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 296, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200.

■ Appellant makes the further point that jurisdiction was based on diversity of citizenship, that a secondary boycott is illegal in Illinois, Meadowmoor Dairies v. Milk Wagon Drivers' Union, 371 Ill. 377, 21 N.E.2d 308; Ellingsen v. Milk Wagon Drivers' Union, 377 Ill. 76, 35 N.E.2d 349; 2063 Lawrence Avenue, etc., v. Van Heck, 377 Ill. 37, 35 N.E.2d 373, and insists that if the case were new, the court would be required to enforce the laws of Illinois, except as its jurisdiction is limited by the Norris-LaGuardia Act.

We think in this case it is clear that the sole object of the appellees was to bring about the unionization of appellant's employees. In such a situation, the power of the court to grant the relief prayed depends upon the jurisdiction conferred upon it by the statutes of the United States, Lauf v. E. G. Shinner & Co., 303 U.S. 323, 327, 58 S.Ct. 578, 82 L.Ed. 872.

In Levering & Garrigues Co. v. Morrin, 2 Cir., 61 F.2d 115; Id., 2 Cir., 71 F.2d 284, as in our case, the defendants did not stand in direct relationship of employees and employers. The plaintiffs, before the passage of the Norris-LaGuardia Act, filed a complaint for an injunction, alleging that the defendants, labor unions, were attempting by persuasion, threats, and intimidation, to compel the plaintiffs to operate a closed shop. Diversity of citizenship and obstruction of interstate commerce, it was claimed, conferred a federal jurisdiction. The court held that the interference was too indirect and remote to constitute violation of the Sherman Act, that as to diversity of citizenship it had jurisdiction

as to some of the defendants, and remanded the case, 61 F.2d 115. The case proceeded to trial as to the defendants over whom the court had jurisdiction, and an injunction was granted. In the meantime, the Norris-LaGuardia Act was enacted into law, and the question on the second appeal was whether by reason of the Act, the court had jurisdiction on the ground of diverse citizenship. The court reversed the decree and held that the District Court was without power or authority to issue an injunction against the defendants, who were engaged in a controversy arising out of an attempt to establish a closed shop by notifying general contractors of the intention of members of a union to refuse to work, and that the plaintiffs could not prevent the defendants from inciting sympathetic strikes, 71 F.2d 284, certiorari denied 293 U.S. 595, 55 S.Ct. 110, 79 L.Ed. 688.

The question yet remaining is whether enough has been shown justifying a modification of the injunction.

In the consideration of this question it is well to remember the admonition of the court in the Swift case, supra, 286 U.S. 119, 52 S.Ct. 460, 76 L. Ed. 999, that nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead the court to change what was decreed after years of litigation. In this connection we are permitted to examine and judicially notice the proceedings formerly had by the parties, De Bearn v. Safe Deposit & Trust Co., 233 U.S. 24, 34 S.Ct. 584, 58 L.Ed. 833. From these records it appears that there was evidence tending to prove that appellees' agents resorted to destruction of appellant's property and made threats of violence upon appellant's employees. It is possible that the appellees have mended their ways and have turned over a new leaf and that such a showing may be made, but it has not been made by the record in the instant case; consequently, we believe that justice would be better served if the cause were remanded to the District Court to inquire into the good faith of the appellees and whether they come into court with clean hands.

The order is reversed, and the cause is remanded with directions to proceed in accordance with this opinion.