**O. V. WRIGHT et al., Plaintiffs,**

v.

**SYSTEM FEDERATION NO. 91, RAIL-
WAY EMPLOYEES' DEPARTMENT,
AFL–CIO, et al., Louisville & Nashville
Railroad Company, Defendants.**

Civ. A. No. 942.

United States District Court
W. D. Kentucky,
Louisville Division.

Aug. 7, 1958.

Marshall P. Eldred, Brown & Eldred, Louisville, Ky., for plaintiffs.

Robert E. Hogan, Louisville, Ky., Mulholland, Robie & Hickey, Toledo, Ohio, Schoene & Kramer, Washington, D. C., for movant defendants System Federation No. 91, etc., et al.

Woodward, Hobson & Fulton, Louisville, Ky., H. G. Breetz, Louisville, Ky., for defendant Louisville & N. R. Co.

SHELBOURNE, Chief Judge.

In July, 1945, twenty-eight non-union employees of the Louisville & Nashville Railroad Company, for themselves and representing all non-union employees upon the Louisville & Nashville System, instituted an action against that railroad company and certain shop craft unions, seeking a declaration of rights and an injunction.

The plaintiffs alleged that the railroad and the unions had discriminated against the class of employees represented by plaintiffs in granting promotions, overtime work, and other privileges and benefits and had, in violation of plaintiffs' seniority rights, preferred members of the unions in their employment relationship because the plaintiffs and the class represented by them had refused to join or maintain membership in the unions.

That proceeding in this Court culminated, on December 7, 1945, in the entry of a judgment "by consent and agreement of all the parties." That judgment is as follows:

"By consent and agreement of all the parties to this action, it is ordered, adjudged and decreed as follows:

"That the defendants, other than the defendant Railroad, and all of the subordinate lodges and locals of the defendant Unions, acting as the duly designated and authorized representatives of any employes of defendant Railroad, are, in accordance with the provisions of the Railway Labor Act and in accordance with the duly adopted bargaining agreements between the defendant Railroad and defendant Unions, under the obligation and duty to represent and treat fairly and impartially, and without discrimination based on membership or nonmembership in any labor organization, all members of the crafts or classes of boilermakers, machinists, carmen, sheet metal workers, electricians, power house employes and railway shop laborers, including plaintiffs to this action, without regard to whether said employes, or any of them, are members of or join or retain their membership in any of said defendant labor organizations, or in any labor organization;

"That the defendant Railroad, in accordance with the provisions of the Railway Labor Act and in accordance with the duly adopted bargaining agreements between the said Railroad and the defendant Unions, is under the duty and obligation to refrain from discrimination against its employes in the crafts or classes of boilermakers, machinists, carmen, sheetmetal workers, electricians, power house employes and railway shop laborers, including the plaintiffs in this action, because of or by reason of the failure or refusal of said employes to join or retain their membership in any of the defendant labor organizations, or in any labor organization;

"That the plaintiffs in this action and all other employes of the defendant Railroad, employed in the boilermakers, machinists, carmen, sheet metal workers, electricians, power house employes and railway shop laborers crafts or classes, who are not members of the defendant labor organizations, or any subordinate lodge or local thereof, shall from and after the date hereof and in accordance with the collective bargaining agreements, be entitled, irrespective and without regard to whether said employes, or any of them, are members of or join or retain their membership in any of said defendant labor organizations, or in any labor organization, to the rights of promotion to preferred jobs, to jobs in a higher classification paying a higher rate of pay, to proper protection of seniority, to bid on or be assigned to vacancies, to leaves of absence with proper protection of seniority and to their proper share of overtime work and compensation therefor, as provided for in such agreements now in effect or that may hereafter be in effect in accordance with the Railway Labor Act;

"That all of the defendants, and all of the subordinate lodges and locals of the defendant Unions acting as the duly and authorized representatives of any employes of defendant Railroad, their officers, agents, employes and members, and the defendant Railroad, be and they are hereby enjoined from requiring that the plaintiffs and the classes represented by them in this action join or retain their membership in any of said defendant labor organizations, or any labor organization, as a condition to receiving promotion, leaves of absence, proper protection of seniority, overtime work and any other rights or benefits which may arise out of or be in accordance with the regularly adopted bargaining agreements in effect between the defendant Railroad and the defendant Unions, or that may hereafter be in effect between the defendant Railroad and the defendant Unions in accordance with the Railway Labor Act; and are enjoined from denying to said plaintiffs, or the classes represented by them in this action, promotion to such preferred jobs, jobs in a higher classification with a higher rate of pay, leaves of absence, proper protection of seniority, overtime work or any other right or benefit arising out of or in accordance with the regularly adopted bargaining agreements in effect between the defendant Railroad and the defendant Unions, or

that may hereafter be in effect between the defendant Railroad and the defendant Unions in accordance with the provisions of the Railway Labor Act, for the sole and only reason that the plaintiffs or classes represented by them in this acttion, are not members or refuse to join or to retain their membership in any of said defendant labor organizations, or any labor organization; and they are further enjoined, in the application of the provisions of the regularly adopted bargaining agreements in effect between the defendant Railroad and the defendant Unions, or that may hereafter be in effect between the defendant Railroad and the defendant Unions in accordance with the provisions of the Railway Labor Act, from discriminating against the plaintiffs and the classes represented by them in this action by reason of or on account of the refusal of said employes to join or retain their membership in any of the defendant labor organizations, or any labor organization;

"That one-half the costs of this action be paid by defendant Railroad and the other half thereof be paid by the defendant Unions.

"The Court retains control of this action for the purpose of entering such further orders as may be deemed necessary or proper."

In the case of System Federation No. 91 v. Reed, 180 F.2d 991, at page 998, the Court of Appeals for the Sixth Circuit declared this judgment should be considered as a judgment in a true class action "and res adjudicata of the rights of all of the members of the class represented by the parties plaintiff therein."

July 2, 1957, the defendant unions and their successors filed in this action their motion to modify the injunctive phase of the judgment of December 7, 1945. The amendment sought was to provide that the injunction should have no prospective application to prohibit the defendant unions and the railroad from negotiating, entering into, or applying and enforcing any agreement or agreements authorized by Section 2, Eleventh, of the Railway Labor Act as amended January 10, 1951.

It was alleged in the motion that, at the time the original complaint in this case was filed and at the time the judgment was entered, the Railway Labor Act, particularly Section 2, Fourth and Fifth thereof, made it unlawful for carriers to interfere in any way with the organization of their employees or to coerce or compel their employees to join or remain, or not to join or remain, members of any labor organization.

It was further alleged that the amendment to the Railway Labor Act of January 10, 1951, and now constituting Section 152, Eleventh, of Title 45, United States Code Annotated, permitted the making of union security agreements as limited by that amendment, and authorized carriers and bargaining representatives of railway labor to provide for a union shop; that the unions here involved were currently seeking to negotiate an agreement with the railroad requiring the employees, as a condition to their continued employment, to become and remain members of the labor organizations representing their respective crafts; but, that the defendant railroad had refused to negotiate for such an agreement for the asserted reason that it would subject itself and such labor organizations to charges of contempt for violation of the injunctive phases of the judgment entered herein December 7, 1945.

It was alleged that the 1951 amendment to the Railway Labor Act terminated the rights of the non-union employees to be free from the requirements of union security agreements, and it was further alleged that it was no longer equitable that the injunction should have prospective application by prohibiting the defendant unions and the railroad from negotiating such union shop agreements.

The railroad filed a motion for an extension of time in which to file its response in the present proceedings to a date after the defendant unions should have given notice to individual members of the classes and crafts involved, alleging that some 2,500 of its employees in

said classes and crafts did not belong to any labor organization, all and each of whom had rights adjudged to them in the decree of December 7, 1945, which entitled them to notice of the unions' motion. Such an order was entered, requiring that all persons whose rights might be affected by a modification of the injunction should be given notice of a hearing not less than 20 days prior to the date set for the hearing.

Five of the original plaintiffs in the complaint filed in 1945, for themselves and all non-union employees of the defendant railroad in the machinists, carmen, sheet metal workers, electricians, boilermakers and firemen, oilers, helpers, and laborers crafts, filed a response alleging:

(1) That the movant unions were without authority on behalf of the employees to negotiate for a union shop for the reason that the unions were selected as bargaining representatives for the various crafts under the provisions of the Railway Labor Act prior to January 10, 1951, the effective date of the Railway Labor Act amendment, and at a time when the Railway Labor Act did not authorize or permit the bargaining representatives of employees to negotiate for a union shop;

(2) That, in the action filed by them in 1945, monetary damages in the amount of $5,000 each was sought to be recovered by the 28 plaintiffs; that in agreeing to the said decree the 28 plaintiffs surrendered their right to their claims for monetary damages, except to be paid, collectively, a total of $5,000; that, having surrendered that claim for damages in partial exchange for the judgment providing a declaration of rights and injunction, it would be inequitable to permit the unions to now negotiate for a union shop;

(3) That there had been no change in the factual situation surrounding the parties and the employment of the plaintiffs and the classes represented by them which would warrant or justify a modification of the injunction; that the change effected by the amendment to the Railway Labor Act was neither directory nor mandatory, but permissive only, and the Court would not be authorized to modify the injunction, absent the change in factual situation, and

(4) Finally, the decree or judgment of injunction has not been used as an instrument of wrong or oppression; but, a modification of that decree would make it possible for the unions, through economic pressure or strike, to compel the institution of a union shop and thereby compel all of the employees of the railroad to join and retain membership in a labor union in order to obtain and maintain rights and benefits of employment on the railroad, and would thereby set for nought and nullify the judgment entered by agreement of all the parties to the prejudice of all non-union employees of the railroad.

By amendment to plaintiffs' response, it was alleged that there existed a feeling of hostility, bitterness and resentment on the part of the railroad's employees who were members of the defendant unions toward the employees who were non-members of the unions; that this hostility and bitterness had been greatly enhanced as a result of a 58-day strike which occurred on the railroad in 1955. It was alleged that during said strike union and non-union employees worked, and that those who belonged to the unions and who worked during the strike were either expelled from the unions or voluntarily relinquished their membership therein; that following the termination of the strike the union employees displayed a hostile attitude toward all employees who had worked during the strike and subjected said employees to all manner of indignities in order to force them to relinquish their employment, and that this feeling of hostility continued. It was alleged that should the modification of the injunction be granted a union shop would be established and the non-union employees would be compelled to join the unions and, after they were subject to the unions' discipline, they would be further discriminated against and punished for

their failure to voluntarily seek and maintain membership in the unions and for their failure to cease work during the period of the strike.

Testimony was heard by the Court on February 3 and 4, 1958, and, at the request of counsel, time was granted for the filing of briefs. Counsel for the unions, for the railroad, and for the non-union employees have filed extensive briefs showing intensive study, all of which have been most helpful to the Court.

The question for decision, as stated by counsel for the unions, is "should an injunction be modified, in its prospective application, when the law upon which it was based is subsequently changed so as to expressly authorize conduct which was previously forbidden."

Authority for modification of the judgment and injunction is referred to as Rule 60(b) (5) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The pertinent portion of which rule is,

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; * * *."

The railroad and non-union employees insist that, under the law applicable to this case, a change of law alone is not compelling and, in fact, would not authorize the modification in the absence of change in the facts or circumstances, citing Thompson v. Maxwell, 95 U.S. 391, 24 L.Ed. 481; United States v. Swift & Company, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; Western Union Tel. Co. v. International Brotherhood, 7 Cir., 133 F.2d 955; Pacific Tel. & Tel. Company v. Henneford, 199 Wash. 462, 92 P.2d 214; Degenhart v. Harford, 59 Ohio App. 552, 18 N.E.2d 990.

The unions, conceding arguendo that a change in facts as well as law is a part of the burden of proof devolved upon them in seeking the modification, say that no more basic or compelling change in facts could exist than the change in the law which completely undercuts the source of the rights protected by the injunction. They argue that when the injunction was issued railroad security agreements (union shops) were prohibited by statute and today they are expressly approved, and that the express provision of the statute that such agreements "shall be permitted" shows a change in factual relationships than which none could be more decisive.

We adopt for discussion the following outline contained in the brief of counsel for the unions:

    I. Legal Basis for Modification.

    (a) Continuing authority of the Court to modify prospective application of judgment.

    (b) Sufficiency of change in law to justify modification.

    (c) Authority to modify unaffected by consent nature of decree.

    II. Insubstantial Nature of Objects Raised by Other Parties.

At the inception of this case, the Court was impressed with the language of the 1951 amendment to the Railway Labor Act which provided that, despite any other provisions of the Railway Labor Act or any other statute or law of the United States or of any state, any carrier affected by the Railway Labor Act and a labor organization duly designated and authorized to represent employees in accordance with the requirements of that Act shall be permitted to make agreements requiring, as condition of continued employment, that within 60 days following the beginning of such employment, etc., all employees should become members of the labor organization representing their craft. However, from the history of the 1951 amendment, as reflected by the proceedings in Committees and as determined by the Supreme Court in the case of Railway Employees' Dept.

v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 718, 100 L.Ed. 1112, "the union shop provision of the Railway Labor Act is only permissive. Congress has not compelled nor required carriers and employers to enter into union shop agreements."

■ This Court has concluded that the Railway Labor Act as amended permits the railroad and bargaining unions to effectuate by agreement a union shop. Correspondingly, the Act leaves the railroad and bargaining unions at liberty to agree that a union shop shall not prevail and that a condition of retention of employment shall not be the maintenance of union membership by an employee in the bargaining union or any union. This reasoning applied to the agreement which underlay the decree of December 7, 1945, when the Railway Labor Act forbade a union shop, forces the Court to the conclusion that the unions were not compelled to agree that membership in a union would not be required of the plaintiffs as a condition of employment in any bargaining agreement then in effect between the railroad and the unions, or such agreements as might thereafter be in effect between the railroad and the defendant unions in accordance with the Railway Labor Act.

A reading of the judgment will show a reference in each instance where the injunction was given, in referring to the bargaining agreement, not only to the agreement then in effect but to such future agreements as might thereafter be effected between the railroad and the bargaining unions. There was then no provision in the Railway Labor Act prohibiting the railroad and the unions from agreeing that a union shop should not obtain. There is no prohibition now in the Railway Labor Act as amended prohibiting the railroad and the bargaining unions from agreeing that a union shop shall not prevail. Under the teaching of the Hanson case, if the union shop agreement is permissive, it is also permissive to agree that a union shop shall not prevail.

■ The Court agrees with counsel for the unions that there is continuing authority in the Court to modify the prospective application of a judgment of injunction. This is the teaching of the case of the United States v. Swift & Company, 286 U.S. 106, 52 S.Ct. 460, 462, 76 L.Ed. 999, where the Supreme Court said there was no doubt that a court of equity has power to modify an injunction in adaptation to changed conditions though the injunction was entered by consent. The Court said, "Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. * * * The result is all one whether the decree has been entered after litigation or by consent." There remains the question: should that power be exercised in this case?

Considering counsel's second heading, the sufficiency of change in law to justify modification, it is concluded that the reasoning of the Swift case leads to the conclusion that the change in the Railway Labor Act in 1951, deleting the prohibition against a union shop and making it permissive for the railroad and the bargaining unions to provide for a union shop, does not authorize a modification of the decree which enjoined the railroad and the unions from providing for a union shop in existing agreements or those to be thereafter made under the provisions of the Railway Labor Act. The law would have prohibited the then making of such an effective bargain had no agreement been made. In the Swift case, the Supreme Court said, "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned."

Finally, upon counsel's proposition that the nature of objects raised by the railroad and the original plaintiffs are insubstantial, it is shown without an attempt at refutation that bitterness and hostility

exist between the union and non-union employees of the railroad, and also between the unions and their members who worked during the strike of 1955. The existence or non-existence of animosity, hostility, or bitterness is not decisive of the question involved on the pending motion. Counsel for the unions insist that any threat of reprisal from that source could be avoided by suitable provision in the judgment or order of modification in addition to the safeguard provided in the 1951 amendment to the Railway Labor Act. The circumstances proven do not convince the Court that such supervision of the conduct of a union of its affairs among its own membership, as such a provision might entail, should be undertaken.

It is to be remembered that the provisions of the Railway Labor Act made illegal a union shop in 1945, when the injunction was agreed upon. Hence, it was then unnecessary for the railroad and the unions to agree, as they did, that the non-union members should not then be required to join or maintain membership in any of their craft unions as a condition precedent to employment. The law so prohibited, Section 152, Fourth and Fifth, Title 45, United States Code Annotated, Railway Labor Act. The railroad and unions went further to provide by their agreement that no such requirement of union membership should thereafter be in effect in any bargaining agreement in accordance with the provision of the Railway Labor Act. The 1951 amendment to the Act did no more than make negotiations for a union shop permissive, Railway Employees' Dept. v. Hanson, supra. The amendment did not nullify the agreement or the injunction. It did not prohibit an agreement between the railroad and the unions that a union shop should not exist. Hence, the Court leaves the parties as they agreed to be and to remain.

The motion to modify is overruled and an order so providing will be tendered for entry by counsel for plaintiffs in accordance with Rule 7 of the local rules of this Court.