Maywood Farms Company, Appellant, v. Milk Wagon Drivers' Union of Chicago, Local 753, et al., Appellees.

**Gen. No. 42,134.**

Heard in the first division of this court for the first district at the February term, 1942. Opinion filed September 9, 1942. Rehearing denied September 28, 1942.

WILLIAM H. SLOAN and MURPHY, LILLIANDER & GEMMILL, all of Chicago, for appellant; WILLIAM B. GEMMILL, of Chicago, of counsel.

DAVID A. RISKIND and ABRAHAM W. BRUSSELL, both of Chicago, for appellees.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff is a distributor of milk in Chicago and its suburbs; its principal office is in Maywood; it employs about 60 persons; it purchases milk from farmers; it sells the milk at its plant in Maywood to independent

contractors or vendors and delivers milk by its trucks to stores throughout the city of Chicago, where the consumers purchase and carry the milk to their homes. To the extent that the business is successful it competes with the milk delivered by wagons throughout the city direct to homes, and the milk is delivered at a lower price.

Defendant Milk Wagon Drivers' Union regards this competition as unfair. It caused the plant of plaintiff to be picketed by persons who carried banners declaring that plaintiff was unfair to organized labor. It went further and placed pickets about the stores of such persons as purchased and sold plaintiff's milk. There was no claim plaintiff was unfair as to the treatment of or wages paid to its employees.

Plaintiff filed its complaint praying an injunction against this picketing and violence, intimidation, etc. said to go with it. The trial court dismissed the complaint. Plaintiff appealed to this court. We reversed the order and directed the trial court to issue the injunction as prayed. *Maywood Farms Co. v. Milk Wagon Drivers Union of Chicago, Local 753*, 301 Ill. App. 607 (Abst.).

On February 13, 1941, defendants relying on later cases filed in the trial court its petition praying modification of the injunction so as to permit peaceful picketing. Defendant relied on a number of cases holding that such picketing was lawful even in support of a secondary boycott. *Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc.,* 312 U. S. 287; *American Federation of Labor v. Swing,* 312 U. S. 321; *2063 Lawrence Avenue Bldg. Corp. v. Van Heck,* 377 Ill. 37; and *Ellingsen v. Milk Wagon Drivers' Union of Chicago, Local No. 753,* 377 Ill. 76. March 4, 1941, the trial court so modified the injunction. Plaintiff appealed and we affirmed the order. *Maywood Farms Co. v. Milk Wagon Drivers' Union of Chicago, Local 753,* 313 Ill. App. 24. Thereafter peaceful picketing

was continued by defendants until November 5, 1941, when a change was made which brought about the present litigation.

November 6, 1941, plaintiff filed its petition alleging that defendant had changed its method and was using force, intimidation and violence in disregard of the injunction as modified. The court after hearing the evidence ruled James Kennedy, president of defendant union, Peter Hoban, its vice president, and Al Richards, its business agent, to show cause why they should not be punished for contempt for violating the injunction. As first drawn the order also directed the defendant union to likewise show cause. This was afterwards changed by order of the judge by deleting at the request of defendants' attorney and over objection of plaintiff the name of the defendant union. Afterwards plaintiff filed a petition setting up that defendants were using violence and intimidation and praying that the order of March 4, 1941, permitting peaceful picketing should be set aside. Defendants answered. Plaintiff moved that evidence taken on the rule to show cause should also be considered as applicable to the issue under this petition. Ruling was reserved and at the end of the hearing denied. The prayer of the petition was also denied, and the rule on the three respondents to show cause discharged.

Plaintiff appeals from the order of November 10, 1941, deleting the name of the defendant union, from the order to show cause, from the order of November 19, 1941, discharging the rule, and from an order entered denying its petition to set aside the order of March 4, 1941; also from the order denying its motion to consider the evidence taken on the rule to show cause on the issues raised by the petition of plaintiff to vacate the order of March 4, 1941.

We hold the court should have ruled defendant union to show cause. Respondents were officers of the union and acting for it. The injunction ran against

the union. There was no reason to rule the officers to answer and at the same time excuse the union for which they were acting in what they did. The union is a juridical entity. It is not excused from liability for its acts by reason of the fact that it is a voluntary unincorporated association. *Anderson & Lind Mfg. Co. v. Carpenters' Dist. Council,* 308 Ill. 488, 496. The court erred in not ruling the union to answer.

We think also the court might well have considered as applicable to the issues on the rule to show cause and the petition to set aside the order modifying the injunction so as to permit peaceful picketing all the evidence heard on each issue. The issues were identical; the parties were the same; the same judge was to pass on the issues. Under these circumstances there was no necessity to take evidence of the same occurrences as given by the same witnesses twice. The trial judge intimated he could not set aside this order because the injunction was permanent and the term of court at which it was entered had gone by. The court was hardly consistent in this. The original injunction was also permanent. The term of the court at which it was entered had passed, but the order to modify the injunction so as to permit peaceful picketing was nevertheless entered. The Supreme Court of the United States gave a sufficient answer to the problem in the mind of the court when in the *Meadowmoor* case it said that an injunction of this kind "is permanent only for the temporary period for which it may last." Upon the same theory this court sustained the order modifying the original injunction. (313 Ill. App. 24.) We think the motion ought to have been granted.

We come to the question of whether respondents were guilty of violating the injunction by the use of violence and intimidation, etc. The issue was hotly contested. There is a voluminous record. Abstracts are submitted by each of the parties, adding much

to the labors of this court. We have carefully considered all the evidence. In our opinion it shows respondents were guilty beyond a reasonable doubt. It would unduly extend this opinion to discuss every circumstance in detail. We therefore summarize.

Oscar E. Miske was president of plaintiff; Leslie Goudie was president of Teamsters' Joint Council No. 25 of Chicago, affiliated with the international union. There were 47 local unions subject to Goudie, of which was defendant union. The whole membership of these would number about 50,000 persons.

Goudie, testifying for respondents, said he had a conversation with defendant's officials, Haggerty, Kennedy and Hoban, about the 4th or 5th of November, 1941; they told him of their peaceful picketing and their exercise of the right of free speech according to approved standards. Apparently it had not proved effectual and sufficient from their standpoint. He told them, he says, that was not "the right procedure." He told them the best plan would be "to go out to Maywood Farms and talk to the men and get a contract direct from the employer." He says he had his clerk call up the locals "about cooperation of other affiliated locals under my joint council. . . . I instructed my clerk to call them up and tell them that we were going to call a strike on the Maywood Farms and if they could be of any help or assistance we would like to have them around there."

November 5, all the respondents with officers of the defendant union and an undetermined number of members, officers and business agents of affiliated unions, gathered early in the day at plaintiff's place of business. Plaintiff's employees numbered about 60. The persons who gathered on this occasion are estimated from 10 or 15 to 150 persons. Respondent Kennedy was present, and each day reported the progress to Goudie. It is agreed the drivers were accosted on this first morning, and the evidence for plaintiff tends to

show were threatened and warned not to go out on their routes. Respondents deny threats, but whether they were made or not there is no doubt about what happened.

About 9 o'clock on this first day, at the intersection of route 53 and Irving Park Boulevard, one of plaintiff's trucks was found abandoned. The hood was raised, the ignition wires as well as two fog lights had been removed. Early on November 6, a like unusually large number of men and automobiles gathered at plaintiff's plant. Attorneys for plaintiff appeared before the trial judge (court then being in session) and at the suggestion of the judge appealed to the sheriff of Cook county for protection. The sheriff sent squad cars to protect the trucks on the highways. This protection began on Thursday afternoon, November 6. The protection was withdrawn on Friday afternoon of November 7. Goudie tells why this came about. He says that on November 6 he had a report from Kennedy as to the progress. The report came sometime in the afternoon. Kennedy called up from Maywood. He said the Maywood Farms were running trucks and that they were being convoyed from the sheriff's office. He asked what they could do, and Goudie said, "Jim, all you can do is keep your place there and keep off the Maywood Farms Co. and don't interfere with their trucks." This is what he said. What he did he also tells. "I went to the sheriff's office on November 7, to protest against the sheriff's squad cars convoying the trucks to jobs and so forth and the sheriff said, 'We have to protect lives and property.' I told him that I had no objection to that . . . but I didn't think it was right to make delivery men out of policemen." This was (according to Goudie) between 3 and 4 o'clock in the afternoon. He says, "I was concerned with whether Sheriff O'Brien had his police out there because I thought that it was working against the employees of the company as well as our organization.

. . . I talked to the sheriff to try to get his men from convoying the trucks.'' Kennedy, president of the union, was with Goudie when he interviewed the sheriff. At 4:30 p.m. of that day the squad cars of the sheriff ceased giving protection. This was Friday afternoon.

What happened on Monday is significant. Barsevick, six years an employee of plaintiff, a witness who the trial judge said was so frank that he would believe him without corroboration, testifies that on Monday morning at about 9 o'clock he was driving a truck for plaintiff picking up milk from farm to farm. As he drove down Big Timber Road a black sedan pulled up along side and shooting was started. He pulled his brakes and stopped. There were five men in the black sedan. They had dark hats turned down over their faces. He had seen the car before. It was a black Cadillac, a 1941 car. Four other cars drove up. They beset him on either side and before and behind. There were five cars in all. He recognized the first car as one he had seen in front of the dairy all the time with defendant's pickets standing around it with the usual signs. There were about twenty men in these five cars that assaulted him. The men got out, kicked the panels and sides out of the truck. The shooting came only from the first car. The witness, with his helper, ran down the road to a farm house. They afterwards walked back and examined the truck. The windows, panels and sides were knocked out, the floor was kicked in and the radiator filled with bullet holes. This testimony is corroborated by that of two other disinterested witnesses, hunters who were passing that way.

Violence was not, however, confined to remote roads. On the morning of November 7, Gabrielson and Helmuth Miske, two employees of plaintiff, went to work at the plant as usual. Some 22 steps away was a coffee shop, and they went there to get food and drink.

The place was crowded with the organizers who had been called together. As Gabrielson came out the door he was hit in the eye, and he names respondent Hoban as the man who hit him. He looked around and saw Miske lying on the sidewalk. The crowd set upon him and hit him continuously as he went from the door of the restaurant to the office. His arms were pinioned; he was pounded in the face and over the head. Miske was likewise assaulted. His condition is described by agreement in the record as follows: "Two black eyes, the right eye blacker than the left eye. The right eye ball is red and inflamed. I see scratches on his nose and on his right cheek and under his eyes and I see three cut places on his lip." The court inquired whether his eyes were black before he was struck, and the witness replied in substance that they were not.

Defendants called these men together. They offered no opposition to this beating and slugging. All this violence came about as a part of a movement defendants designed and of which they were a part. Arrangements were made with military precision. A crowd was present as a result of telephone calls made from Goudie's clerk after a conference with Goudie and officials of the union. They who came out numbered all employees at plaintiff's plant. Automobiles were on hand in large numbers. For a court to hold actions such as this the exercise of the right of freedom to speak and to write would be ridiculous.

The trial judge seemed to be of the opinion it was necessary for plaintiff to show that the respondents had themselves personally and openly participated in acts of violence. This is not the law. They who plan, aid and abet are also responsible. There is a wealth of authority. High on Injunctions, Vol. II, par. 1416; *Christensen v. People,* 114 Ill. App. 40; *Anderson & Lind Mfg. Co. v. Carpenters' Dist. Council,* 226 Ill. App. 532; *Fansteel Metallurgical Corp. v. Lodge 66 of*

*Amalgamated Ass'n of Iron, Steel & Tin Workers,* 295
Ill. App. 323; *Milk Wagon Drivers Union of Chicago,
Local 753 v. Meadowmoor Dairies, Inc.,* 312 U. S. 287.
In the case last cited the defendant union here was
also defendant there. The words of the opinion by
Mr. Justice FRANKFURTER are appropriate: "These
acts of violence are neither episodic nor isolated.
Judges need not be so innocent of the actualities of such
an industrial conflict as this record discloses as to find
in the Constitution a denial of the right of Illinois to
conclude that the use of force on such a scale was not
the conduct of a few irresponsible outsiders. The
Fourteenth Amendment still leaves the state ample
discretion in dealing with manifestations of force in
the settlement of industrial conflicts. And in exercising
its power a state is not to be treated as though the
technicalities of the laws of agency were written into
the Constitution. . . . It is true of a union as of
an employer that it may be responsible for acts which
it has not expressly authorized or which might not be
attributable to it on strict application of the rules of
*respondeat superior. International Association of
Machinists v. Labor Board,* 311 U. S. 72, 80; *Heinz Co.
v. Labor Board,* 311 U. S. 514."

The opinion goes on to say in substance that there
is nothing in the Fourteenth Amendment that prevents
a State from placing confidence in a chancellor's de-
cree and compels it to rely exclusively on a police-
man's club. This last case is particularly applicable
to the issue arising on this record as to whether in
view of the violence indulged in, peaceful picketing
should be longer permitted. After stating the facts the
opinion of Mr. Justice FRANKFURTER states the issue
thus: "The question which thus emerges is whether
a state can choose to authorize its courts to enjoin
acts of picketing in themselves peaceful when they
are enmeshed with contemporaneously violent conduct
which is concededly outlawed."

The question is answered in the affirmative.

The order finding respondents not guilty and dismissing plaintiff's petition will be reversed and the cause remanded with directions to enter an order finding respondents Kennedy, Hoban and Richards guilty of contempt as charged and imposing on them a proper penalty. The order dismissing the petition of plaintiff praying that the order of March 4, 1941, modifying the original decree of injunction and permitting peaceful picketing should be set aside will be reversed and the cause remanded with directions to enter an order as prayed, and for other proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded with directions.*

O'CONNOR and MCSURELY, JJ., concur.