## Quin O'Brien, Appellee, v. Marguerite Eustice, Appellant.

### Gen. No. 40,070.

Opinion filed February 1, 1939.

THEODORE W. MILLER, of Chicago, for appellant.

McKINLEY, PRICE & QUINDRY and ROBERT E. CANTWELL, both of Chicago, for appellee; WILLIAM McKINLEY and PAUL E. PRICE, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Plaintiff Quin O'Brien filed his complaint in the superior court, asking that an alleged marriage claimed to have been performed on February 3, 1937, at Morrison, Illinois, between plaintiff and defendant Marguerite Eustice, be declared null and void. A decree was entered by said court on April 21, 1937, in favor of plaintiff. It is from that decree that defendant brings this appeal.

The decree found that the plaintiff was kidnapped, threatened with a gun and held in custody against his will by defendant, Marguerite Eustice, and her agents and abused in an attempt to force him to marry said defendant; that no marriage ceremony was performed by anyone authorized to do so; that although at all times under duress, the plaintiff did not consent to the

pretended marriage, but there stated that he would not marry the defendant under any circumstances; that the said pretended marriage was never consummated between plaintiff and defendant; that the return which appears upon the marriage license in evidence is false and void. Thereupon, the court decreed that said marriage between plaintiff and defendant be declared null and void from the beginning and that the defendant is not entitled by virtue of said pretended marriage to be called or known as Mrs. O'Brien or the former Mrs. O'Brien or any corruption thereof and so is perpetually enjoined from such use of the name of O'Brien or a corruption thereof; that all persons acting for or on behalf of the defendant are hereby perpetually enjoined from introducing, addressing, advertising or referring to the defendant as Mrs. O'Brien, or the former Mrs. O'Brien.

The theory of the plaintiff as set forth in his brief is that a pretended marriage ceremony was conducted while plaintiff and defendant were in a sedan car in Morrison, Illinois, on February 3, 1937, by someone unknown to plaintiff, while plaintiff was being held under duress and did not consent to such pretended ceremony and that said pretended marriage is null and void.

The theory of the defendant as set forth in her brief is that the parties were already married by virtue of a marriage in Louisville, Kentucky, on May 2, 1936, but that she was tricked into that marriage by plaintiff who contrived to have the ceremony thereof performed by a person not having the authority to perform the same; that the plaintiff intended that such marriage remain secret; that defendant believed said marriage ceremony in Louisville, Kentucky, was performed by a person having authority to do so and was in good faith, notwithstanding the bad faith of plaintiff; that the subsequent marriage ceremony at Morrison, Illinois, on February 3, 1937, was performed with plaintiff's con-

sent. This theory or claim with regard to a former marriage in Louisville, Kentucky, is referred to only in defendant's brief. No pleading was on file or proof made in the trial court of any such marriage, except the mere statement of defendant in her counterclaim when asking for separate maintenance and alimony which later was withdrawn, and it was agreed in open court that the only issue then remaining in the case was the validity of the marriage at Morrison, Illinois.

Counsel for defendant contends that defendant was "rushed" to trial when not prepared and that the cause should have been tried before some other judge; that defendant wanted a change of venue and that defendant had not received a fair and impartial trial.

The two principals to this rather unusual proceeding tell entirely different stories as to what happened. We shall first dispose of what happened in court preliminary to the trial and then pass on the rulings of the court and the proceedings at the trial.

Counsel for defendant complain that the trial court "rushed" the trial before the defendant was ready to go to trial. The suit was filed on February 9, 1937. Thereafter the defendant on or about February 15, 1937 came into court and filed a counterclaim, less than a week thereafter, asking for separate maintenance, solicitor's fees and alimony. Defendant thereupon obtained a rule upon the plaintiff to answer the counterclaim in 7 days and had the hearing set for February 27, 1937. At this time it is quite apparent it was the defendant who was doing the so-called "rushing" with regard to the hearings.

It was manifest that the question as to whether or not the marriage was valid or otherwise, had to be determined before the court could intelligently pass upon the question as to the allowance of alimony as well as solicitor's fees. As heretofore stated, on motion of defendant the hearing was set for February 27,

1937. On February 24, 1937, on motion of defendant an order was entered that the motion for temporary alimony as well as solicitor's fees be withdrawn until final trial and decision and that the order setting the matter for a preliminary hearing on February 27, 1937, be vacated. At that time an order was entered permitting the appearance of associate counsel for defendant and for a continuance of the case. On March 16, 1937, defendant filed an affidavit saying that she was ill in Clinton, Iowa, since February 25, 1937.

As near as we can learn from a rather incomplete abstract, the cause was continued at the request of the defendant on four different occasions and the court did not commence the hearing until March 20, 1937.

Counsel for defendant contends that this cause should not have been heard by Judge McKinlay, for the reason that an order had been entered by the executive committee of the superior court assigning all undisposed of contested divorce, separate maintenance and annulment cases to Judge George W. Bristow who at that time was hearing cases in the superior court. This case was assigned to Judge McKinlay in its regular order as he had been designated as the judge to hear divorce cases for that year. The purpose of the assignment to Judge Bristow was made so as to dispose of cases which had been pending several years and did not affect this cause. This question was not presented in the trial court and it cannot be raised for the first time in this court.

Further complaint is made by counsel for the defense against Judge McKinlay for not having granted a change of venue on the day the cause was set for trial. The record shows that no notice was given or affidavits presented as is required by ch. 146, sec. 3, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 107.318]. Counsel who then represented defendant merely presented a telegram from his client and told the court what she said

therein. Judge McKinlay reminded counsel that he was not complying with the statute and counsel replied that he knew that and would not urge the point, thereupon waiving any motion for change of venue, whereupon Judge McKinlay rightfully proceeded with the trial.

We do not believe that Judge McKinlay did other than is required by law. He granted several continuances at the request of the defendant and evinced a patient desire to do justice between the parties and he does not in any way deserve the criticism leveled at him by counsel for defendant as expressed in the language employed in the oral argument and also in the briefs filed in this court.

This case is largely one of fact. The evidence in this case shows that on or about the evening of February 2, 1937, the plaintiff was invited by the defendant to take a ride with her in her automobile to a point somewhere in the city of Chicago, on the pretext of performing an errand. Plaintiff and defendant had been acquainted for some time, each occupying an apartment in the same building. Plaintiff accompanied the defendant. Arriving at a point on the northwest side of the city, the automobile in which they were riding was overtaken by a large limousine, whereupon defendant stopped the automobile in which they were riding. Evidently by prearrangement, two men emerged from the limousine and forcibly took plaintiff from the automobile in which he had been riding with defendant, tied his hands with rope and put him in the rear seat of the limousine between them. They then drove to the residence of one Brubaker, a justice of the peace, at Morrison, Illinois, where arrangements had been made by defendant and her father to have a marriage ceremony performed between plaintiff and defendant. A marriage license had been procured by the defendant prior

to the arrival of plaintiff who was in the custody of the two men who had forcibly taken him from defendant's automobile. The justice of the peace, at the request of defendant and her father, made out the returns on the marriage certificate which was signed by the defendant and two persons as witnesses, one being her uncle and the other her father. This was done before the arrival of plaintiff or the performance of the claimed marriage. When the plaintiff was brought in before the justice of the peace, the latter asked him if he was the man who was to be. married and plaintiff answered, "No" and vehemently protested against such proceeding, stating that he had been kidnapped and reminding the justice of the peace that if he proceeded further said justice would be liable for the crime of kidnapping and other violations of the criminal law. During this discussion the defendant had gone into another room and was not present. The plaintiff, whose hands were tied, was thereupon permitted to sit down between the two men who had brought him there. Then the justice of the peace, according to his own testimony, ordered them all out of the house, stating in substance that he had been deceived and that he would have nothing further to do with the matter.

William Saffer an uncle by marriage of the defendant, whose name had been placed upon the marriage license as a witness, also stated that he placed his name on the marriage license long before the plaintiff arrived at the residence of the justice of the peace and that he did not, in fact, see any marriage ceremony performed and corroborated the statements of the plaintiff and the justice of the peace in detail.

The defendant contends, however, that after being ordered out of the house by the justice of the peace, the ceremony was performed outside in the automobile to which the plaintiff had been removed by his two cap-

tors. This was denied by the justice of the peace and Saffer, as they claim they did not accompany plaintiff to the car and plaintiff's two captors James Norman and Joe Abadecola were not produced, so that no verification of the alleged marriage was made. The county clerk's return on the license which was made by the defendant, shows that the same was not signed by the plaintiff. There is a blank space provided for such signature. The clerk's testimony was that he noticed the signature was not on the certificate and he thought it very unusual.

After leaving the residence of the justice of the peace, defendant drove her automobile, in which was the plaintiff and the two men who had taken him captive, and when the car came within the city limits of Chicago, the plaintiff seeing a policeman on the sidewalk, pulled the emergency brake on said automobile and leaped from the car and sought the protection of the policeman, and from that point returned to his home without defendant.

Marriage, as in all civil contracts, requires that the parties give their voluntary consent. Where such consent is sought by duress, even though the contract is entered into, the validity of the contract is destroyed and renders the marriage void. *Hagenson v. Hagenson,* 258 Ill. 197; *De Vries v. De Vries,* 195 Ill. App. 4; *Cartwright v. McGown,* 121 Ill. 388.

If, as defendant contends, the marriage was performed in an automobile just outside the residence of the justice of the peace, after the justice of the peace had refused to perform said marriage in his residence, we do not see how that marriage could be considered as being voluntary when plaintiff's consent had not been procured, as disclosed by the evidence.

It is contended in this court that the plaintiff and the defendant had been married in Louisville, Kentucky,

some months prior to the alleged marriage at Morrison, Illinois. That contention does not appear in the pleadings. The statement of the defendant in that regard was that while in Louisville, Kentucky, the plaintiff introduced her to one ''Judge Jeffries'' while they were in the lobby of one of the hotels, or a room adjacent to the lobby, and defendant claims said Jeffries performed a marriage ceremony between herself and plaintiff. This was denied by plaintiff. No evidence is offered as to any marriage license having been obtained and such a license is required by section 2105 of the Kentucky statutes.

We fail to see the logic in defendant's effort to maintain that there had been a previous marriage in Louisville, Kentucky. If a valid marriage had been performed in Louisville, Kentucky, then why did defendant go to the trouble of having a marriage performed at Morrison, Illinois? However, defendant asks no relief as to any rights she may claim by virtue of the so-called Kentucky marriage.

Defendant makes complaints and raises other questions in this court for the first time, which under the rules we cannot consider. The propositions raised are general, such as the defendant did not have a fair trial; that prejudicial remarks were made by opposing counsel, etc. From a review of the record, however, we are convinced that a fair trial was had and no prejudicial remarks were made which affected the decree. This was a trial without a jury. On the admission of evidence, the trial judge when hearing a case without a jury, is presumed to have considered only such evidence as is competent.

In the case of *People v. Link*, 282 Ill. App. 520, this court cited the case of *In the Matter of Petition of Radtke v. People*, 171 Ill. App. 462, wherein it was said: ''The rule is that, on a trial by the court without a jury,

no improper or incompetent evidence will be presumed by a reviewing court to have influenced the court in reaching a decision, where there is sufficient proper evidence to justify the judgment." (Citing cases.)

The final question raised is whether or not the injunctional order preventing the defendant from holding herself out as the wife of plaintiff, using his name or any abbreviations thereof, is broader than the prayer of the bill and the evidence. The complaint filed in this case contained no charge nor does the evidence show that the defendant was holding herself out under the name of Mrs. Quin O'Brien or any abbreviation or "corruption" thereof or that the plaintiff was in any way injured thereby, and no prayer for an injunction appears in the complaint to enjoin any such damage. When the proof was offered on the complaint no evidence was adduced by which it could be seen that the plaintiff was in any way injured by the defendant calling herself Mrs. O'Brien, or that she was holding herself out as the wife of the plaintiff or threatening to do so or, if she did, that plaintiff would thereby be damaged. Further, no showing was made that if an injunction was not issued, it would result in permanent injury to plaintiff. The issuance of an injunction should be based upon the allegations contained in the complaint, prayer for such injunctional relief, proof that the defendant was doing the things as charged in the complaint, and a showing that damage would result therefrom to the injury of plaintiff if such actions were permitted to continue.

In the case of *Kelly v. Kelly*, 293 Ill. 169, cited by plaintiff, the court at page 173, said: " 'But, even when a prayer of general relief is sufficient, the special relief prayed at the bar must essentially depend upon the proper frame and structure of the bill, for the court will grant such relief, only, as the case stated will justify, and will not ordinarily be so indulgent as to permit a bill framed for one purpose to answer another,

especially if the defendant may be surprised or prejudiced thereby.' "

In the instant case, as before stated, there was no allegation in the complaint, no prayer and not sufficient proof to support the issuance of an injunction. In addition to this it may be noted that by the statute (ch. 96, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 109.436–109.438]) that anyone after residing in this State for 6 months may assume any name he or she desires, by appearing by petition in court in compliance with such statute and, by consent of court and proper finding in a decree, have his or her name changed or a new one adopted in lieu of his or her former name. The injunctional order as issued in the instant case would tend to interfere with such a proceeding and the operation of said statute.

In this case the evident purpose of the complaint filed was to have set aside the *record* of a fraudulent marriage ceremony. No prayer was made for such relief. For that reason we think that part of the decree, which granted the injunction to plaintiff and against defendant, was error.

Defendant further complains that the proof did not sustain the allegations of the complaint. The chancellor saw the witnesses, heard them testify and was well able to judge as to their credibility, and we believe was fully justified in finding that the manifest weight of the evidence was in favor of plaintiff and against defendant. The record shows no substantial corroboration of defendant's strange story that a valid marriage ceremony was performed.

According to plaintiff's complaint, the only specific relief sought was: " . . . that the court by its decree declare said pretended marriage ceremony null and void *ab initio*. . . ."

The trial court found:

"That no marriage ceremony was performed to unite

the plaintiff and the defendant, by anyone authorized so to do'';

If as plaintiff contends and proves, and the trial court finds, that the marriage ceremony never occurred, how can the court annul that which never existed? The proof shows that as the result of the actions of the defendant, the return on a marriage license was filed with the county clerk of Whiteside county, which on its face appears to be valid and legal, but which the evidence shows does not truthfully show of record what actually happened. This return on the marriage license which was filed with the county clerk, was intended doubtless to give notice to the world that the parties thereto were married. The allegation of facts, the prayer of the complaint or the decree does not order that the marriage license return made out by the justice of the peace on the back of the license which was wrongfully placed of record by defendant or her father by giving the same to the county clerk of Whiteside county — which document is the only thing of substance of record which relates to the transaction — be annuled or canceled and set aside. To annul this record in the county clerk's office of Whiteside county, it would be necessary to make the county clerk of that county a party to this suit, which was not done in this instance.

For the reasons herein given the decree of the superior court is reversed and the cause is remanded with directions.

The court is directed that plaintiff may amend his said bill of complaint so that it will contain the necessary allegations and prayer for relief; also that plaintiff make the clerk of Whiteside county a party to the suit; that these things be done within a reasonable time and that plaintiff may offer any further, proper and necessary proof to sustain his said bill as amended.

*Decree reversed and cause remanded with directions.*

HALL, P. J., and HEBEL, J., concur.