Arch Baker and Opal Baker, Appellees, v. Retail Clerks' International Protective Association, Local Union No. 1000, Eldorado, Illinois, et al., Appellants.

Opinion filed March 2, 1942.

LLOYD H. MELTON, of Harrisburg, for appellant.

C. A. WHITESIDE, of Harrisburg, and HARRY J. FLANDERS, of Eldorado, for appellees.

MR. JUSTICE DADY delivered the opinion of the court. Upon complaint of plaintiffs, and after hearing evi-

dence, the circuit court entered a decree enjoining the defendant union and certain of its members from "Advertising that the store of the Plaintiffs is unfair to union labor by picketing, display of printed matter, or by handbills, newspaper publications, or by carrying printed signs near said business or from molesting or disturbing said customers or possible customers of the plaintiffs, or from disturbing the orderly process of said business in any manner."

The facts on which the injunction order was issued are as follows:

Plaintiffs, who are husband and wife, own and operate in a building which is also used by them as a residence, a small grocery store and delicatessen in the city of Eldorado. They do not employ any clerks or help of any kind. The store is kept open in the evenings and also on Sundays and holidays.

The defendant union is made up of retail clerks in the city of Eldorado. This union had entered into contracts with a number of store owners in Eldorado, which, in addition to fixing wages, provided for the closing of such stores at 5 o'clock p.m. on each week day except Saturday, at 8 o'clock p.m. on Saturdays, and entirely on Sundays and holidays. Defendants requested plaintiffs to sign such a contract, but plaintiffs refused on the ground that they could not afford to agree to the closing hours provided by the contract.

About a week after this refusal defendants commenced picketing plaintiffs' store. The pickets of the defendant union (not more than one at a time) walked back and forth in front of plaintiffs' store carrying a banner on which was printed, "This Store Unfair to Organized Labor." This type of picketing continued from February 1, 1940, to about July 18, 1940, at which time it was discontinued. The picketing was renewed on January 29, 1941, and was thereafter continued until February 8, 1941, when the injunction complained of was issued.

In addition to carrying the banner, defendants' pickets also spoke to a number of plaintiffs' customers and asked them to stop trading with plaintiffs "because plaintiffs' store was unfair to organized labor."

There is no evidence that the picketing during either of these periods was accompanied by any physical violence or threats of violence insofar as plaintiffs' customers were concerned. However, during the second period plaintiff, Arch Baker, on one occasion had a minor physical altercation with one of the pickets. Baker testified that the picket, a "boy," bumped into him as Baker went out of the store, and Baker grabbed him by the collar and told him to get out, and that the boy then left. Baker also testified that on two other occasions he was threatened with bodily harm while at his store by the defendant Falk, but no blows were struck on either of these occasions. Plaintiffs also testified that at times the picket on duty would interfere with the free access of customers by not "offering" to get off the sidewalk in front of the door to the store, thereby making it necessary for customers to wait until the picket was free of the door before the customer could enter the store. The sidewalk at this point is about four and one-half feet wide.

Plaintiffs attempted to show that coercive pressure was applied by other labor organizations upon some of their members who were also plaintiffs' customers, for the purpose of inducing them to stop trading at plaintiffs' store, but the evidence falls short of connecting the defendants with these alleged acts. Moreover, much of such evidence is pure hearsay.

It is defendants' contention that, under the circumstances as disclosed by the foregoing evidence, the injunction granted by the trial court violates their constitutional guarantee of free speech. Defendants assert that, although no employer-employee dispute is involved in this case, they have a legitimate interest in the question of plaintiffs' closing hours; that plaintiffs,

by remaining open at late hours and on Sundays and holidays, draw business away from other retail stores which employ members of the defendant union; that this may result in the dismissal of members of the union from their employment; that in this manner the continued operation of plaintiffs' store during the prescribed hours is a threat to their welfare and security; that they are entitled to meet this threat by peaceful picketing of plaintiffs' store in an endeavor to persuade plaintiffs to adhere to such closing regulations; and that such picketing is only the exercise of their right of free speech.

It is now settled, both by the United States Supreme Court and our own Supreme Court, that the right to picket peacefully in labor disputes is not to be restricted to cases involving the relationship of employer-employees, and that any attempt to restrict peaceful picketing where the subject matter of the dispute contains elements of common interest, is in violation of the right of free speech as guaranteed by the Fourteenth Amendment to the United States Constitution. (*American Federation of Labor v. Swing*, 312 U. S. 321, 61 Sup. Ct. 568; *Ellingsen v. Milk Wagon Drivers' Union*, 377 Ill. 76.)

In the case before us defendants cannot justify their picketing on the ground that they wish to unionize plaintiffs' business because plaintiffs are not retail clerks and do not employ any clerks. Plaintiffs' only offense from the standpoint of the union is in keeping their store open longer than the stores which employ members of the defendant union. A question is thus presented whether this one item of dispute furnishes a legally justifiable basis for defendants' action in picketing plaintiffs' store.

The case of *Senn v. Tile Layers Protective Union*, 301 U. S. 468, 57 Sup. Ct. 857, furnishes the closest analogy that we have been able to discover to the facts involved in this case. Senn conducted a small tile con-

tracting business in which he at times employed one or two tile layers and one or two helpers, but he did much of the work himself. Neither Senn nor any of his employees were members of any union and Senn himself was ineligible for membership in the defendant union as a tile layer because he had not served the necessary apprenticeship. Defendant union presented to Senn a contract which contained a provision that no person engaged in the tile contracting business should work as a helper, but that all work should be done by union tile layers. Senn was willing to execute the contract except for this provision, which would have prevented him from doing any further work himself as a tile layer. The defendant union was not willing to permit Senn to unionize his employees and also to continue work himself, and in order to persuade Senn to sign the contract the union commenced picketing at his place of business. Senn sought to enjoin this picketing on the ground that no labor dispute was involved and that such picketing interfered with his property rights as protected by the Fourteenth Amendment, but the Wisconsin court (222 Wis. 383, 268 N. W. 270, 268 N. W. 872) refused to grant him relief. This judgment was affirmed by the United States Supreme Court and, speaking through Mr. Justice BRANDEIS, that court made this observation as to the constitutional question which was involved: "There is nothing in the Federal Constitution which forbids unions from competing with nonunion concerns for customers by means of picketing as freely as one merchant competes with another by means of advertisements in the press, by circulars, or by his window display. Each member of the unions, as well as Senn, has the right to strive to earn his living. Senn seeks to do so through exercise of his individual skill and planning. The union members seek to do so through combination. Earning a living is dependent upon securing work; and securing work is dependent upon public favor. To win the pa-

tronage of the public each may strive by legal means.''

It is true that the Wisconsin Labor Code at the time of the *Senn* case provided that no injunction should issue in any labor dispute to restrict peaceful picketing, but the court did not consider this statute as the sole source of defendants' right to picket. Mr. Justice BRANDEIS made this point clear by saying: ''Members of a union might, without special statutory authorization by a State, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution.''

Inasmuch as the object sought to be accomplished by the defendants in the *Senn* case was deemed by the United States Supreme Court to be a lawful object, we are bound to follow such ruling and cannot hold that in the present case the defendants were pursuing an unlawful object in attempting to persuade plaintiffs to change the conduct of their business with reference to closing hours.

We conclude, therefore, that defendants, in the exercise of their constitutional right of free speech, were entitled to carry on peaceful picketing at plaintiffs' place of business.

There remains the further question whether the picketing as carried on by defendants was ''peaceful'' within the recent definition of that term by our courts.

In *Milk. Wagon Drivers' Union v. Meadowmoor Dairies Inc.,* 312 U. S. 287, 61 Sup. Ct. 552, the court held that the ''right to free speech in the future cannot be forfeited because of disassociated acts of past violence,'' or ''denied by drawing from a trivial rough incident or a moment of animal exuberance, the conclusion that otherwise peaceful picketing has the taint of force.''

In the present case there was no violence whatever practiced upon the plaintiffs' customers, and there were no threats of violence or physical intimidation toward them. We do not consider that the three inci-

dents testified to by the plaintiff, Arch Baker, concerning his difficulty with the defendants' pickets, were sufficient to give such a violent setting to defendant's picketing as to justify the issuance of an injunction, which in effect restrained the defendants from peacefully picketing plaintiffs' place of business.

The injunction as granted by the trial court went even further than this and restrained the defendants from "advertising that the store of the plaintiffs is unfair to union labor, by picketing, display of printed matter, or by hand bills, newspaper publications, or by carrying printed signs near said business . . . ." It is our opinion that in all of these respects the order was also erroneous as an infringement of the right of free speech.

The trial court by its order also enjoined defendants from molesting or disturbing plaintiffs' customers and from disturbing the orderly process of plaintiffs' business in any manner. We do not think that these broad provisions of the injunction order were justified by the evidence. We find no convincing evidence in the record before us that plaintiffs' customers were molested or disturbed by any unlawful acts on the part of the defendants' pickets. We think that the testimony of the plaintiff, Arch Baker, to the effect that the picket on duty "did not offer" to get off the sidewalk when customers approached the store, was too vague and indefinite to form the basis for a finding that plaintiffs' customers were in fact hindered or prevented from entering the store. The only other unlawful acts complained of by plaintiffs are the three isolated incidents testified to by plaintiff, Arch Baker, in which he became involved in some personal difficulty or argument with defendants' pickets. Clearly, defendants' pickets had no legal right to interfere with plaintiffs' business by threatening either of the plaintiffs with physical injury. However, the plaintiff, Arch Baker, may have been partly responsible for

these incidents because of his attitude that the defendants had no legal right to picket his place of business in any manner. For a period of six months, except for these three incidents, defendants' picketing was entirely peaceful. As was said in the *Ellingsen* case, *supra*, "the record does not contain evidence tending to indicate that the threats or statements such as were made are apt to become an element of future picketing." An injunction will not lie merely to prevent the commission of a tort or crime without a showing of probable irreparable injury from a continuation of the wrongful act or acts sought to be enjoined. *Central Cotton Garment Mf'rs Ass'n v. International Ladies' Garment Workers Union,* 280 Ill. App. 168).

There being no basis upon which the present injunction order can be sustained, the decree of the circuit court is reversed.

*Reversed.*