Stanley Cielesz and John O'Donnell, Copartners Doing Business as O'Donnell's Grocery, Appellants, v. Local 189, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO Union, Wilbur L. Halbin, Frank Fox and Earl Saltow, Officers and Business Representatives of the Union, William Byers, Eddie Roberts and Ed Krause, Pickets for the Union, Appellees.

Gen. No. 11,294.

Second District, First Division.

April 18, 1960.

Rehearing denied June 7, 1960.

Miller, Thomas, Hickey, and Collins, and Nelson and Nelson, all of Rockford (Francis E. Hickey and Carroll H. Nelson, of counsel) for plaintiffs-appellants.

Alex J. Victor and Collis M. Hennelly, of Rockford, for defendants-appellees.

JUSTICE SPIVEY delivered the opinion of the court.

Plaintiffs, Stanley Cielesz and John O'Donnell, Co-partners doing business as O'Donnell's Grocery, hereinafter styled "O'Donnell's Grocery," filed a complaint in the Circuit Court of Winnebago County seeking to enjoin the picketing of their grocery store. They named as defendants Local 189, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO Union; Wilbur L. Halbin, Frank Fox, and Earl Saltow, Officers and Business Representatives of the Union; William Byers, Eddie Roberts, and Ed Krause, pickets for the Union, hereinafter styled "Local 189."

The complaint charged that the principal purpose of the picketing was to intimidate, coerce, or compel the plaintiffs to enter into a collective bargaining agreement with Local 189. In the main, defendants' answer denied the allegations of plaintiffs' complaint.

A hearing followed on the complaint and answer thereto resulting in a temporary restraining order enjoining the defendants' alleged illegal picketing of plaintiffs' grocery store.

Thereafter, a hearing was had on making the temporary injunction permanent. At the conclusion of the hearing, plaintiffs obtained leave of court to file an amendment to the complaint to conform to the proof.

The amendment to the complaint alleged (1) the effect of demanding the signing of the agreement would result in a restraint of the sale of fresh red meat after 6:00 p. m. on weekdays and also Sundays and/or holidays, and would be in restraint of trade and contrary to public policy, and (2) that the actions of the de-

493

fendants are contrary to Chap. 38, Sect. 569, Ill. Rev. Stat. 1957. On motion the second portion of the amendment was struck, the first allegation allowed to stand to which defendants filed an answer.

The Circuit Court on January 2, 1959, ordered the temporary injunction dissolved and dismissed the complaint as amended for want of equity. The court, however, retained jurisdiction for the sole purpose of considering defendants' suggestion of damages.

On plaintiffs' motion, the court ordered the temporary injunction to remain in force during the pendency of the appeal pursuant to Chap. 69, Sect. 21, Ill. Rev. Stats. 1957.

Plaintiffs-appellants appeal from the order of January 2, 1959, contending the Illinois Anti-Injunction Act does not apply where there is no labor dispute existing between the employer and employees; that picketing to compel the signing of a union contract where there is no dispute between the employer and his employees is unlawful; that picketing, the purpose of which is to eliminate competition, is in restraint of trade and contrary to public policy, and; that picketing, the purpose of which is to force the signing of a contract establishing the hours for selling red meats is an attempt to fix the amounts or quantity of meats sold and is thus contrary to the provisions of Chap. 38, Sect. 569, Ill. Rev. Stats. 1957.

The facts leading to the present controversy are not without dispute. There were categorical denials, explanations and lack of memory as to certain events. The trial court sitting without a jury was in a better position to attach the weight and credibility to be given to the testimony of the witnesses. We are unable to say that the decretal order of the trial court is against the manifest weight of the evidence.

It appears the plaintiffs had been operating a grocery store in Rockford for ten years. They had never

signed a union contract with Local 189. Plaintiffs had been invited to attend contract negotiation meetings, and on two occasions had been furnished copies of the union agreement.

Local 189 had adopted the custom of not requiring the formality of signing a contract if the owner agreed to abide by the terms of the agreement. Ninety percent of the sixty-five shops under the union's jurisdiction had lived up to the terms of the contract whether they had actually signed the agreement or not.

In mid-1955, the plaintiffs had in their employment a union butcher by the name of Eddie Krause. His membership in Local 189 was known to the plaintiffs. Krause had made complaint to Earl Saltow, president of Local 189, about working conditions particularly with reference to Sunday work which was forbidden by the contract. Saltow contacted plaintiffs, and after a minor concession, it was agreed that there would be no Sunday work by the union butcher.

At the time of the commencement of the picketing, the plaintiffs employed two members of Local 189, William Reedy and Dewey Hogan. Plaintiffs were aware of their union affiliation and paid them the union wage scale. These employees had never made complaints about contract violations directly to the plaintiffs but had to their union representatives to whom they stated they were required to make all complaints. Among the complaints were salesmen stamping merchandise and part-time school boys working in the meat department, both of which came under the jurisdiction of the union. These complaints were taken up with the plaintiffs by the representatives of the union.

In January, 1958, a copy of the current union agreement was delivered to the plaintiffs. Shortly before July 11, 1958, Local 189 called a meeting with some

495

of the merchants to discuss contract violations, including the sale of red meat on Sunday, salesmen stamping merchandise, and school boys working in the meat department. Plaintiffs were invited to this meeting but did not attend. Those present agreed to abide by the agreement.

On July 11, 1958, representatives of the union discussed with plaintiffs the meeting they had had with the other merchants, at which time plaintiffs agreed to go along with the contract. On other occasions plaintiffs had indicated they would abide by the contract.

Later, on September 2, 1958, the union received complaints from other grocers who had adopted the union agreement relative to plaintiffs' violations of its terms. The next day further discussion was had, and a signed contract was demanded by Local 189 on the ground the plaintiffs had breached the oral agreement of July 11. On this latter occasion, the plaintiffs refused to sign an agreement and informed the union representatives that they had given the union men a week's notice that they would be laid off.

Local 189, on September 4, 1958, commenced picketing plaintiffs' place of business. The two union butchers ceased working for the plaintiffs at that time. It may be said that the picketing was conducted in a peaceful manner as interpreted by the courts of this State.

Following the establishment of the picket, further negotiations followed between the parties. At plaintiffs' request, another copy of the contract was furnished plaintiffs, and on September 9, plaintiffs suggested they enter into a "sweetheart contract."

The agreement in part provided (1) a basic work day of eight hours beginning at 9:00 a. m.; however, the work day might commence at 8:00 a. m. with over-

496

time rates to apply to all work before 9:00 a. m. and after 6:00 p. m.; (2) a basic work week of five, eight hour days, Monday through Saturday, with one day off, the operating hours to be determined by the employer "provided further that a member of Local 189 shall be on duty whenever fresh meats (except fresh poultry) are sold or offered for sale after 6:00 p. m."; and (3) there shall be no work on Sundays, Memorial Day, Fourth of July, Labor Day, Christmas Day, and New Years Day.

Defendant, Local 189, in its defense, relies upon the so-called Anti-Labor Injunction Act of 1925, Chap. 48, Sect. 2a, Ill. Rev. Stats. 1957, and suggests that its actions fall within the intent and purview of that Act as interpreted by courts of Illinois. Section 2a provides,

"No restraining order or injunction shall be granted . . . in any case involving or growing out of a dispute concerning terms or conditions of employment, . . . or from peaceably and without threats or intimidation recommending, advising or persuading others to do so; or from peaceably and without threats or intimidation being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or abstain from working, or to employ or to peaceably and without threats or intimidation cease to employ any party to a labor dispute, or to recommend, advise or persuade others so to do."

■ ■ Stated broadly, an injunction will not be granted against peaceable picketing for a lawful purpose. The element of purpose for which the picketing is being conducted must be taken into consideration to ascertain whether it is in furtherance of a lawful purpose and not contrary to some statute or public

policy. I. L. P., Labor Relations, Sect. 75. Each case must be decided upon its own particular facts and circumstances.

■ Plaintiffs' contention that the Illinois Anti-Injunction Act does not apply unless a labor dispute exists between the employer and his employees is not tenable. In support of that contention they cite Meadowmoor Dairies v. Drivers Union, 371 Ill. 378, 21 N.E.2d 308, and Bitzer Motor Company v. Teamsters Local 604, 349 Ill. App. 283, 110 N.E.2d 674.

What was said in those cases in that respect is no longer the law of Illinois. The Supreme Court of the United States in reviewing the Meadowmoor case held that peaceful picketing is a right which the workingman has as a means of communication of his complaint, where the subject matter of the dispute contains elements of common interest, even though the relation of employer and employee does not exist. Meadowmoor Dairies, Inc. v. Milk Wagon Drivers' Union, 312 U. S. 287, 85 L. Ed. 836. To like effect: American Federation of Labor v. Swing, 312 U. S. 321, 85 L. Ed. 855.

The Supreme Court of Illinois in Ellingsen v. Milk Wagon Drivers' Union, 377 Ill. 76, 35 N.E.2d 349, adopted this principal and said,

"These cases present a new view of the constitutional right of free speech as applied to cases like the one before us. They are the law, binding on all State courts. It follows, therefore, that notwithstanding the inapplicability of the Illinois Anti-Injunction act, or the fact that there is not here an employer-employee labor dispute, defendants had a right to, in a peaceful manner, picket the stores of the plaintiffs."

■ The evidence further bears out the defendants' argument that an actual labor dispute exists between the employers and employees. Reedy and Hogan were members of Local 189 and were receiving the union scale of wages. Their membership in the union was

498

known to plaintiffs. They had complained to the officers of their union of deviations from the terms of the union contract which were in turn handled by the officers of Local 189. The contract was negotiated on their behalf to improve and better the conditions of their employment. The mere fact that Reedy and Hogan had not made any complaints personally to the plaintiffs is without moment. The office of the union officers is to handle all complaints and disputes for their members.

■ Plaintiffs' suggestion that picketing, the purpose of which is to compel an employer to sign a union contract where there is no dispute between an employer and employee is unlawful, is likewise without merit.

We fail to see the distinction between picketing to compel the signing of a written agreement and picketing to bring about an oral agreement where there is a dispute between the employer and his employees. Nor do any of the cases cited by plaintiffs hinge upon such a distinction. A dispute existed as to the conditions under which red meat might be sold.

In the Bitzer case, the union by picketing attempted to coerce the employer to sign an agreement covering his sales employees, none of whom desired to become members of the union. No other employees were members of that union. The Appellate Court in that case concluded that until a hearing on the issuance of a permanent injunction where the union had an opportunity to demonstrate the purposes for the picketing, a showing that coercion by the union for the sole purpose of inducing the signing of a contract when the employees have expressed a desire not to belong to that union is against public policy.

The court in holding the actions of the union to be against public policy noted that working men should be free to join a union or not without interference, restraint, or coercion from their employer, and that

499

any attempt to take steps in violation of these rights of the employees is against public policy.

Plaintiffs cite Dinoffria v. International Teamsters Union No. 179, 331 Ill. App. 129, 72 N.E.2d 635. Plaintiffs in that case, the owners, conducted the business solely and exclusively and did not wish to join the union. The court concluded that the only discernible purpose was to compel the owners to join the union and that such action was unlawful.

The case of O'Brien v. People ex rel. Kellogg Switchboard & Supply Co., 216 Ill. 354, 75 N. E. 108, also cited by plaintiffs, was distinguished in Fenske Bros. v. Upholsterers Union, 358 Ill. 239, 193 N. E. 112, wherein it was pointed out that the O'Brien case was decided before the adoption of the Anti-Injunction Act and was coupled with threats, intimidation, violence, and a malicious intent to injure the employer's business.

It is next urged that an attempt to prohibit the sale of fresh meat on certain days and during specified hours amounts to a restraint of trade and as such is contrary to public policy and Chap. 38, Sect. 569, Ill. Rev. Stats. 1959.

It is said that the contract itself demonstrates restraint of trade in curtailing the sale of fresh red meat on these occasions. The contract does not prohibit the sale of fresh red meat after 6:00 p. m. if a member of Local 189 is on duty. The occasion would only arise on Sundays and certain holidays when union butchers were prohibited from working. This would amount to plaintiffs closing one of the departments of their store on those occasions. It would in no wise effect the sale of any other items over which the union did not have jurisdiction.

■■ The question to be resolved is, is there a true relation between the objective of safeguarding the health of the employees from excessive hours of em-

500

ployment and the proposed means used to accomplish it. The trial court resolved this question of fact in the affirmative, and we agree. The fixing of hours of employment of members of a union is a legitimate labor function. Baker v. Retail Clerks' International Protective Ass'n Local Union No. 1000, Eldorado, Ill., 313 Ill. App. 432, 40 N.E.2d 571, Kold Kist v. Amalgamated Meat Cutters and Butchers Workmen of North America, Local No. 421, 221 P.2d 724, cited by appellant.

The union has jurisdiction over the sale of fresh meats. Only the sale of fresh meats require the presence of a member of Local 189 on duty. The sale of no other item is curtailed in the absence of a union butcher.

It is suggested by appellant that the entering into this agreement by Local 189, either orally or in writing, with their competitors and the receiving of complaints from their competitors was an unlawful combination in restraint of trade and thus violative of Chap. 38, Sect. 569, Ill. Rev. Stats. 1959, and the common law offense of combinations having for their objective the restraint of trade.

What we have already said of the means used to accomplish the purpose would be equally determinative of this contention.

Plaintiffs have cited no cases under the Illinois Anti-Trust Act, nor has our research uncovered any, wherein it could be said that the conduct of the parties in the instant case in pursuing a legitimate labor objective resulted in restraint of trade. The Kold Kist case and Alpha Beta Food Mkts. v. Amalgamated Meat Cutters and Butcher Workmen of North America, 305 P.2d 163, both cited by the plaintiffs so recognize.

In these two cases the California court in constructing the California anti-trust statute held, upon the facts in evidence, the primary purpose was to restrain

501

and diminish trade. In each of those cases the agreement would have prevented the sale of frozen foods of competitors, unless sold by union butchers, thus eliminating competition when they were not on duty.

Concluding, as the trial court properly did, that there was no evidence of a violation of Chap. 38, Sect. 569, there was no error in striking paragraph two of plaintiffs' amendment to the complaint. In addition, this order of October 21, 1958, was not the subject of the notice of appeal, and this alleged error is not properly before this court.

Defendants-appellees allege that the trial court erred in continuing the temporary injunction in force pending the appeal. This order was entered on January 7, 1959, following the order of January 2, 1959, appealed from. No cross-appeal having been filed by the appellees, this alleged error is not before this court.

The order of the Circuit Court of Winnebago County is affirmed and the cause remanded for the sole purpose of considering the question of damages under the suggestion of damages, jurisdiction of which was retained by the Circuit Court of Winnebago County.

Affirmed and remanded.

McNEAL, P. J. and DOVE, J., concur.