ILLINOIS POWER COMPANY, Plaintiff-Appellee, *v.* PAUL LATHAM *et al.*, Defendants-Appellants.

(No. 72-123;

Fifth District—October 30, 1973.

Robert Godfrey, of East St. Louis, (Gerald Montroy, of counsel,) for appellants.

Carl W. Lee and Robert G. Wuller, Jr., of Roberts, Gundlach & Lee, of Belleville, for appellee.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from an injunction order of the circuit court of St. Clair County.

The plaintiff-appellee, Illinois Power Company, is a public utility in the business of distributing natural gas in East St. Louis and nearby areas. In East St. Louis, maintenance repairs and other gas services are performed by construction crews who are employed by the Illinois Power Company and who are members of certain construction craft unions. During the month of March, 1971, certain citizens began to request that the Illinois Power Company hire additional minority workers on its work crews. After several meetings with the Mayor of East St. Louis and other city officials, and with the announcement by the plaintiff that there were no openings, these same citizens held a series of demonstrations to dramatize the situation. During some of these demonstrations criminal acts were allegedly committed by the defendants.

On August 13, 1971, the plaintiff filed its complaint alleging that the defendants, named and unnamed, had engaged in a violent, intimidating and disruptive course of conduct which endangered not only plaintiff's personnel and property, but the public safety as well. The complaint additionally alleged that the defendants had made unlawful demands on the plaintiffs, in that defendants demanded the hiring of members of the United Black Workers Association to the exclusion of all others, in violation of the stated policy and laws of the State of Illinois and the United States of America. Plaintiff's complaint finally alleged irreparable harm and the inadequacy of any legal remedy, and prayed for an injunction restraining certain activities on the part of the defendants. The answer filed on behalf of the defendants, denied all of the material allegations and raised the affirmative defenses of preemption by federal law, lack of jurisdiction of a court of equity to enjoin criminal acts, infringement of the state and federal constitutional rights of the defendants, and failure of plaintiff to meet the equitable requirement of "clean hands". The answers of the named defendants Paul Latham, Willie Gregory, Dwight Quinn and Lewis Norton were stricken pursuant to Supreme Court Rule 219(c), after being properly called under Section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1971, ch. 110, par. 60.) The appellants did not below, nor do they here, contest the propriety of the

trial court's action. The circuit court denied the plaintiff's petition for a restraining order and permanent injunction, after determining that it was without authority to restrain criminal acts.

On appeal, this Court remanded the case to the circuit court, holding that a petition for a restraining order and for a permanent injunction against defendants was improperly denied on the sole ground that the acts complained of were crimes and that the court could not restrain criminal acts, since, although a court of equity is reluctant to issue an injunction to intervene in purely criminal matters, it will do so where the relief is necessary to protect the rights of the public or of private individuals. (*Illinois Power Co. v. Latham* (1972); 3 Ill.App.3d 1000, 279 N.E.2d 133.) On remand, after considering all the evidence and testimony previously taken, and upon consideration of the case, an injunction order was issued.

The defendants-appellants seek reversal of the permanent injunction order and dissolution of the decree on one or more of the following grounds: that the trial court erred in granting the injunction because it violates their constitutional rights as guaranteed by the Fourteenth Amendment; because the terms of the injunction are constitutionally too broad; because the order seeks to enjoin conduct not pleaded or proved; because the evidence fails to sustain the burden of proof with respect to defendant Metro-East Labor Council, Inc.; and because the plaintiff entered a court of equity with unclean hands.

■■■ Appellants first argue that the state courts cannot constitutionally enjoin the right of private citizens to exercise freedom of speech in the form of peaceful picketing and peaceful appeals to the public, and that this injunction order clearly transgresses this right guaranteed by the Fourteenth Amendment. The problem faced by the circuit court in this case was to strike a balance between the State's interest in public safety and an individual's interest in his first amendment right to freedom of speech. When dealing with attempts by individuals to exercise their first amendment rights to freedom of speech in the form of picketing, a court must take into consideration the purpose for which the picketing is being conducted to ascertain whether it is in furtherance of a lawful purpose and not contrary to some statute or public policy. (*Cielesz v. Local 189*, 25 Ill.App.2d 491, 167 N.E.2d 302.) Peaceful picketing, distribution of pamphlets, and the organization of demonstrations to protest allegedly racially discriminatory hiring practices of an employer would be protected under the Federal Civil Rights Act and Fair Employment Practices Act (42 U.S.C. 2000(e)—2a). (*Centennial Laundry Co. v. West Side Organization* (1966), 34 Ill.2d 257, 215 N.E.2d 443.) Appellants contend that their picketing and demonstrations were peaceful attempts

to dramatize the fact that the plaintiff hired few minority workers. However, the evidence in this case presented at the hearing does not sustain appellants' contention. There was testimony that defendants-appellants came to various job sites of the plaintiff and threatened plaintiff's employees with axe handles and guns, beat on plaintiff's equipment with axe and pick handles, beat plaintiff's employees with axe handles, attempted to push one of plaintiff's employees into an excavation, attempted to stop work at various sites, and threatened that plaintiff would be unable to get its equipment out of the plant on a certain day. All of this testimony serves to illustrate that the various demonstrations carried on by the defendants were anything but peaceful. They were entangled with threats, intimidation, coercion, and violence. The courts of this state and the United States Supreme Court have consistently held that mass picketing and violence, obstruction of ingress and egress, threats, intimidation and coercion may be enjoined. (*Ossey v. Retail Clerk's Union* (1927), 326 Ill. 405, 158 N.E. 162; *Ellingsen v. Milk Wagon Drivers Union* (1941), 377 Ill. 76, 35 N.E.2d 349; *General Electric Co. v. Local 997* (1955), 8 Ill.App.2d 154, 130 N.E.2d 758; and *Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc.* (1941), 312 U.S. 287.) There was also testimony to the effect that defendants had on several occasions demanded that the plaintiff hire blacks who were members of the United Black Workers Association, and that defendant Latham told plaintiff's employees to tell the office of the Illinois Power Company that they had better start hiring not just any black, but to hire his blacks. This kind of conduct has also been held to be enjoinable. In *Centennial Laundry Co., supra*, the court stated, at 261, that picketing, distribution of pamphlets and the organization of demonstrations for the purpose of forcing an employer to hire a quota of Negro employees would be properly enjoinable as violative of the Federal Civil Rights Act and the Fair Employment Practices Act.

In a most important case, because it is the closest factually to the case at bar, *Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., supra*, the United States Supreme Court affirmed the issuance of an injunction by an Illinois court. In that case the dairies departed from union standards in selling milk and the union took action to compel compliance. Union conduct was found to have involved violence on a considerable scale in that there was property damage, beatings and a display of guns. The Illinois court issued a permanent injunction restraining all union conduct, violent and peaceful. The U.S. Supreme Court granted certiorari on the question of whether a state can choose to authorize its courts to enjoin acts of picketing in themselves peaceful when they are enmeshed with contemporaneously violent conduct, which is concededly

illegal. The Court stated, at 294, that "the picketing  *  *  *  was set in a background of violence" and that "*  *  *  it could justifiably be concluded that the momentum of fear generated by past violence would survive even though future picketing might be wholly peaceful." And, at 294, 295, the Court concluded that it was not written into the "Fourteenth Amendment that a State through its courts cannot have protection against future coercion on an inference of a continuing threat of past misconduct."

The cases cited by the appellants do not sustain their contentions. In *American Federation of Labor v. Swing*, (1941), 312 U.S. 321, the Supreme Court reversed an injunction issued by an Illinois court on the grounds that peaceful picketing or persuasion are unlawful when conducted by strangers to the employer. The Supreme Court held, at 326, that "the right of free communication cannot  *  *  *  be mutilated by denying it to workers, in a dispute with an employer, even though they are not in his employ." *Swing* has no application because it was "an instance of peaceful persuasion disentangled from violence" and the evidence in the case at the bar showed picketing that was anything but peaceful.

The *Ellingsen* case, *supra*, also cited by the appellants, is likewise not applicable because it merely holds that where there is no threat of future violence, an injunction against peaceful picketing should not stand.

The last case cited by the appellants is *Hughes v. Superior Court of California*, 339 U.S. 260. In Hughes the petitioners demanded that respondents' stores hire Negroes until the proportion of Negro clerks to white clerks approximated the proportion of Negro to white customers, and they picketed the stores to force compliance. The picketing was enjoined as being for an unlawful purpose, although pursued in a peaceful manner. The issue presented to the Supreme Court was whether the Fourteenth Amendment to the Constitution bars a State from use of the injunction to prohibit picketing of a place of business solely in order to secure compliance with a demand that its employees be in proportion to the racial origin of its then customers. The Court held, at 466, that it could not "construe the Due Process Clause as precluding California from securing respect for its policy against involuntary employment on racial lines by prohibiting systematic picketing that would subvert such policy." This case, if anything, appears to support plaintiff-appellee's argument rather than appellants' and, again, may not be applicable at all because the picketing was peaceful.

■■ We therefore hold, that the issuance of the injunction does not violate appellants' constitutional rights guaranteed by the Fourteenth Amendment.

Appellants' second contention deals with the injunction itself. Appellants argue that its terms are constitutionally too broad, that it seeks to enjoin a class of all minority group individuals, and that it seeks to enjoin conduct not pleaded or proved. The injunction order reads as follows:

"Therefore, upon proper consideration of the case, it is the Order of this Court to enjoin the following defendants, Paul Latham, Oscar Phillips, Willie Gregory and Dwight Quinn, Lewis Norton, individually and as members and representatives of a voluntary unincorporated association known as the United Black Workers Association and the Metro East Labor Council, Inc. together with the other members of said association and corporation, individually and as representatives of an unnamed class of persons:

1. From compelling or coercing or attempting to compel or coerce plaintiff to engage in any acts declared to be an unfair employment practice under the provisions of the Illinois Fair Employment Practices Act (Illinois Revised Statutes, 1961, Chapter 48, Paragraph 853.)

2. From causing or threatening physical harm or injury or threatening violence or force or intimidating any employees of plaintiff or other persons seeking to perform services for the plaintiff in connection with the furtherance of its function to distribute gas and electricity to the general public.

3. From injurying, [sic] destroying or attempting to injure or destroy any property of plaintiff or that of any officer, agent, employee, supplier or customer of plaintiff.

4. From blocking or obstructing or attempting to block or obstruct the places of ingress and egress from plaintiff's premises at 330 North 29th Street, East St. Louis, Illinois and from actually stopping, blocking, obstructing, interfering with, molesting or harassing or attempting to stop, block, obstruct, interfere with, molest or harass plaintiff's officers, agents and employees; plaintiff's trucks and equipment, or other persons whether suppliers, customers or members of the public who seek and enter or leave said premises of plaintiff or to use its facilities located thereon.

5. From interferring with, molesting, harassing, hindering, annoying or obstructing plaintiff's officers, agents or employees in the performance of their duties.

6. From urging, inciting, encouraging, directing or leading or causing others to do any of the aforesaid acts or from engaging in, entering into or participating in any combinations, agreement

or understanding or conspiracy with others to do any of the aforesaid acts."

Appellants argue that the terms of the injunction are too broad, that it enjoined nebulous conduct and that the trial court improperly followed the plaintiff's draft order. Illinois law on the subject is quite clear. An injunction should be as definite, clear and precise in terms as possible, in order that there may be no excuse or reason for misunderstanding or disobeying it. (*Oehler v. Levy* (1908), 139 Ill.App. 294.) Or in the language of a most recent decision, "a proper injunctional order must couch its directions or prohibitions 'in terms so definite, clear and precise as to demand obedience or to be capable of enforcement or execution'." (*Illinois School Bus Co., Inc. v. South Suburban Safeway Lines, Inc.* (1971), 132 Ill.App.2d 833, 839, 840, 270 N.E.2d 200.) And finally, an injunction order should set forth the acts enjoined with such particularity that the party enjoined can understand precisely what is forbidden. *Hoffman v. Hoffman* (1963), 59 Ill.App.2d 459, 208 N.E.2d 579.

■■ We first note the breadth of the opening unnumbered paragraph of the injunction order herein before set forth, in which the parties enjoined in their various capacities are described. Not only are unnamed other members of both the Black Workers Association and Metro East Labor Council, Inc. enjoined individually, but such unnamed other members are also enjoined "as representatives of an unnamed class of persons". We find nothing in the record to support such "unnamed other members" being enjoined "as representatives of an unnamed class of persons". The record discloses neither acts nor threats of acts by such unnamed persons in any capacities other than individually and as members of the named organizations, and consider the language "and as representatives of an unnamed class of persons" concluding the unnumbered paragraph of the injunction order, as vague, indefinite and in fact nebulous. We order that those words be stricken, and modify the order accordingly.

We particularly note the scope of paragraph 1 of the order. While it is specific in that it is limited to those unfair employment practices defined by the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1969, ch. 48, par. 853), there are neither allegations nor evidence to support threats or acts calculated to compel or coerce plaintiff to engage in all the acts which are by the statute defined as unfair employment practices. There are allegations and there is undisputed evidence to support them, that defendants sought to coerce defendant to employ members of the United Black Workers Association and the Metro East Labor Council, Inc.; that defendants sought to coerce the plaintiff to establish a quota

of black employees and discriminate against both its black and white employees in favor of the black members of these organizations and thus commit unfair employment practices. Under the principals enunciated in the cases above cited (*Oehler v. Levy; Illinois School Bus Co., Inc. v. South Suburban Safeway Lines, Inc.;* and *Hoffman v. Hoffman*) and cases cited therein, we consider paragraph 1 of the order too broad. We therefore modify that paragraph to read:

"1. From compelling or coercing or attempting to compel or coerce plaintiff to engage in the establishment of a quota of black employees, and to discriminate against any of its employees or applicants for employment in favor of the members of the United Black Workers Association and the Metro East Labor Council, Inc."

We likewise find that there are neither allegations nor evidence to support that part of paragraph 4 of the order enjoining action against "or other persons whether suppliers, customers or members of the public who seek and enter or leave said premises of plaintiff or to use its facilities located thereon." We therefore strike that language from paragraph 4 of the order.

We note too the use of the word "harass" in paragraph 4 and the words "harassing" and "annoying" in paragraph 5 of the order. We consider that those words do not set forth the acts enjoined with sufficient particularity. In *Precision Scientific Co. v. International Union of Mine, Mill and Smelter Workers* (1954), 2 Ill.App.2d 531, 543, 120 N.E.2d 356, the court reversed that part of an injunction which restrained massing and congregating, or collecting in crowds, or obstructing the sidewalks and driveways, or picketing and patrolling the sidewalks as "too indefinite and too broad", even though it approved another part of the order. The injunction must be sufficiently specific and clear that the defendants may know exactly what they are restained from doing. (*Centennial Laundry Co. v. West Side Organization, supra.*) The words "harassing" and "annoying" are too indefinite and broad to inform the defendants what they are to avoid doing. For these reasons, the order will be modified to delete the words "harassing" and "annoying" from paragraph 5 of the order, and the word "harass" from paragraph 4 of the order.

As so modified, when read as a whole the injunction merely orders an end to the coercive and violent activities by the named defendants. The specific enjoined activities are those of coercing or attempting to coerce plaintiff to engage in particular discriminatory employment practices, causing or threatening to cause physical harm or injury or violence to plaintiff's employees; injuring or attempting to injure or destroy plaintiff's property; blocking or attempting to block places of ingress and

egress from plaintiff's premises; interfering with or hindering plaintiff's employees in the performance of their duties; and lastly, conspiring or inciting others to do any of the aforementioned acts. These are not broad and nebulous conduct, but rather, clear and precise.

Contrary to appellants argument the *Meadowmoor* case, *supra,* does not hold that adoption of plaintiff's draft order was improper. It merely states, at 296, that according to the best practice, a judge himself should draw the specific terms of restraint and, absent an invasion of constitutional guarantees, the Court would not revise state practices.

■■ Appellants next contend that the injunction order seeks to enjoin a class of all minority group individuals, that there is not authority to be sued as a class, and that the equitable requirement of too numerous parties has not been shown. Here again appellants lack support for their arguments. They cite *Arthur Rubloff & Co. v. Leaf* (1952), 347 Ill.App. 191, 106 N.E.2d 735, as standing for the proposition that there is no authority to sue defendants as a class, but appellants have overlooked two important words in that opinion. The court in *Rubloff* stated, at 196:

> "Plaintiff may sue in a representative capacity on behalf of himself and others similarly situated, but there is no authority for an action *at law* against a defendant in a representative capacity. (Emphasis added.)"

The present action is not an action at law, but in equity, and there is authority for the proposition that, in suits against a voluntary unincorporated association of people in an equitable proceeding, it may not be necessary to make all of its members parties to the suit. According to the court in *Warfield-Pratt-Howell Co. v. Williamson* (1908), 233 Ill. 487, 84 N.E. 706, in such a case, the rule that all persons interested in the subject matter in controversy should be made parties would not apply, but the case would be controlled by an exception to that rule. The exception is that, where the parties are numerous and it is impracticable to bring them all before the court, service upon a part, to act for the other members of the association as well as themselves, will be a sufficient service upon the whole. There are in fact many cases to be found where suits in equity have been sustained against voluntary unincorporated associations, where service was had upon some agent or representative of the group, who in some sense could be said to represent the body of the membership. (*Williamson, supra,* at 496; *Carpenter's Union v. Citizens Committee* (1943), 333 Ill. 225, 164 N.E. 393; *Cox v. Shupe* (1963), 41 Ill.App.2d 413, 191 N.E.2d 250.) Such is the case at bar.

■■ There was testimony that several times from six to 15 men, and at other times, five or six carloads of men arrived at plaintiff's job sites and were involved in threatening and intimidating employees of the plaintiff.

There was also testimony that on several occasions these groups seemed to be led by defendants, Latham, Norton, Phillips and Quinn, who were also identified as representatives of the United Black Workers Association and the Metro East Labor Council, a voluntary unincorporated association and not-for-profit corporation respectively. The allegations of the complaint and testimony of one of the defendants, Leroy Jackson, called under section 60 of the Practice Act, showed that both defendants Latham and Quinn were connected with and claimed to represent the United Black Workers Association and Metro East Labor Council, Inc. There is nothing in the record to support the denial of any of the defendants on this matter, and being plead was admitted by those named defendants whose answers were stricken. Plaintiff did not know and was frustrated in its attempts to discover the names of the members of these organizations and the names of those men who interrupted work at the job sites. Under these circumstances a class action is justified.

Appellants' final argument challenging the propriety of the injunction is that it seeks to enjoin conduct not pleaded or proved, citing *O'Brien v. Eustice* (1939), 298 Ill.App. 510, 19 N.E.2d 137. That case held, at 520, that "the issuance of an injunction should be based upon the allegations contained in the complaint, prayer for such injunctional relief, proof that the defendant was doing the things as charged in the complaint, and a showing that damage would result therefrom to the injury of the plaintiff if such actions were permitted to continue." We feel that the plaintiff has fulfilled these requirements. All of the specific acts enjoined were alleged in the complaint and testified as having actually occurred or as having been threatened. Furthermore, plaintiff showed that injury to the public as well as to the company would result, if such conduct was allowed to continue. And, finally, when given the opportunity to offer testimony controverting plaintiff's allegations, the named defendants either claimed the Fifth Amendment or did not appear to testify. Therefore, the trial court did not abuse its discretion in believing plaintiff's allegations and issuing the injunction.

■■■ Appellants next argue that evidence fails to sustain the burden of proof with respect to defendant Metro East Labor Council, citing *McCrimmon v. Daley* (7th Cir. 1969), 418 F.2d 366. That case held that, before a state officer may properly be made a party defendant to a suit to enjoin enforcement of an act alleged to be unconstitutional, he must have some connection with enforcement of the act. We believe that, in light of the testimony presented on behalf of the plaintiff in the case at bar, Metro East Labor Council was shown to have sufficient connection with the actions enjoined to be made a party defendant to this proceeding. The holding of the court in *Piano & Organ Workers International*

*Union v. Piano & Organ Supply Co.* (1906), 124 Ill.App. 353, supports our conclusion. That case involved a labor dispute wherein it was shown that officers of the union, as representatives of the union, were organizers and supporters of the strikers and took an active role in placing the pickets found guilty of the unlawful acts which characterized the picketing. An injunction was granted and the union appealed from the order contending it was not a proper party. The court held that a court need not wait until an overt act has been committed before including a particular party in a strike injunction order. If there is reasonable fear that a particular party will participate in an unlawful action or actions enjoined against, a sufficient ground exists for the inclusion of such party in the injunction. At various meetings with the plaintiff's officials, defendants Latham and Quinn represented the Metro East Labor Council in attempts to get more blacks hired and, at various job sites where the enjoined actions took place, these same defendants were leaders of the men who engaged in the enjoined actions and identified themselves as representing the Metro East Labor Council. This was sufficient grounds to make the Metro East Labor Council a party defendant.

The final argument presented by the appellant-defendants is that plaintiff entered the court of equity with unclean hands and therefore should be denied relief. Appellants argue that plaintiff practices discriminatory hiring practices which precipitated the incidents enjoined. Appellants cite the testimony of the plaintiff's witnesses regarding the percentage of blacks employed by the plaintiff as proof of discrimination. However, appellants fail to state whether this percentage is low, or how it proves systematic racial discrimination. But the testimony of these same witnesses for the plaintiff does show that the plaintiff had taken steps to increase minority hiring and that the plaintiff was enmeshed in litigation to defend its right to hire minority workers despite union contracts to the contrary.

The only case appellants cite in support of their unclean hands argument, (*Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co.* (1945), 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381), involved a suit by the respondent charging the petitioners with infringement of patents owned by it and breach of several contracts related to the patents. The respondent sought to enforce these contracts. The Court dismissed the suit by resort to the "unclean hand" doctrine when evidence showed that the respondent knew of and suspected perjury in the patent applications, but failed to act to destroy it and, instead, acted on it to secure promises from the petitioners.

■■■ Under Illinois law, misconduct on the part of a plaintiff which will defeat a recovery in a court of equity under the doctrine of "unclean

hands" must have been conduct in connection with the very transaction being considered or complained of, and must have been misconduct, fraud or bad faith toward the defendant making the contention. (*Evangeloff v. Evangeloff* (1949), 403 Ill. 118, 85 N.E.2d 709; *Nice Ball Bearing Co. v. Bearing Jobbers, Inc.* (7th Cir. 1953), 205 F.2d 841.) Furthermore, the "unclean hands" doctrine of equity is not a judicial straight-jacket, is not favored by the courts, is not intended to prevent equity from doing complete justice, and its application rests in the sound discretion of the court. (*Maroney v. Maroney* (1969), 109 Ill.App.2d 163, 168, 249 N.E.2d 871.) In the case at bar there was no evidence that the plaintiff engaged in any inequitable conduct at the various job sites which would cause the defendants to engage in unlawful and violent conduct. And even if the plaintiff does engage in some form of discriminatory hiring, there was no *proof* that it does, or that plaintiff was discriminatory toward any of the named or unnamed defendants. Thus appellants have failed to meet the requirements necessary to have the "unclean hands" doctrine applied and have failed to show any abuse of discretion by the trial court.

Appellants did not below, nor do they here, raise the issue of strict compliance with Section 3—1 of the Injunction Act (ch. 60, § 3—1). We note that the injunction writ provides whatever may have been deficient in the order itself. Under such circumstances the majority of the court consider the order adequate.

In conclusion, the right to conduct a lawful business is a property right which equity may protect by injunction from improper and unlawful interference. (*O'Brien v. Matual*, 14 Ill.App.2d 173, 144 N.E.2d 446.) Appellants intimidating and violent conduct in this case was an improper and unlawful interference with plaintiff-appellee's attempt to conduct a lawful business. An application for injunction is addressed to the conscience and sound discretion of the court, and this Court finds that the trial court has not abused its discretion. The order as modified only enjoins unlawful picketing, and it cannot be said that when the symbol of the picketing is an axe handle the picketing is peaceful. Therefore the order granting plaintiff's prayer for a permanent injunction is affirmed as modified. We remand this cause for the entry of an order and issuance of a writ consistent with this opinion.

Judgment modified and affirmed; cause remanded with directions.

G. MORAN and CREBS, JJ., concur.